UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JODIE L. MALICKI
on behalf of herself and all
others similarly situated,

        Plaintiff,

v.

LEMAN U.S.A., INC.,

        Defendant.

Case No. 17-cv-1674

---

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
HER MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION OF
NOTICE TO SIMILARLY-SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)**

---

## **INTRODUCTION**

At this stage of the proceedings (conditional certification), the Court is to apply a lenient standard[1] and a "court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 848; *see also Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, at * 3 (E.D. Wis. Sept. 11, 2008). Affidavits, declarations, deposition testimony, and other documents may be used to demonstrate a "factual nexus between the plaintiff and the proposed class or a common policy that affects all of the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 750 (N.D. Ill. 2011); *see also Adair*, 2008 WL 4224360, at *8.

---

[1] *Jirak v. Abbott Labs, Inc.*, 566 F.Supp.2d 845, 848 (N.D. Ill. 2008).

Here, Plaintiff has presented the Court with evidence in the form of declarations and exhibits which establish that, at a minimum, between November 28, 2014 through April 11, 2016, Plaintiff and all other hourly-paid, non-exempt Office and Warehouse Employees ("Office and Warehouse Employees") at Defendant's Sturtevant, Wisconsin location were subject to the same policy in practice that uniformly denied them compensation for all hours worked in excess of forty (40) hours in a workweek. That evidence establishes that Office and Warehouse Employees recorded their actual time worked by "clocking in" and "clocking out" on timecards using a traditional (manual) punch-clock system. (Declaration of Susan Satula ("Satula Decl.) ¶ 5; Declaration of Jodie L. Malicki, ECF No. 25 ("Malicki Decl."), ¶ 4.) Even though Office and Warehouse Employees' timecards accurately reflected said Employees' actual time worked each workday, Defendant failed to compensate them for all hours reflected on their timecards. (Declaration of David M. Potteiger, ECF No. 26 ("Potteiger Decl."), Ex. 4, p. L1395; Potteiger Decl., Ex. 5, p. L0514.) Instead, Defendant's policy in practice was to unlawfully shave time from Office and Warehouse Employees' "clock in" and "clock out" times as recorded on their timecards by rounding, deducting, and/or failing to count all recorded and compensable time. This practice resulted in Defendant unlawfully failing to compensate Office and Warehouse Employees for all hours worked in excess of forty (40) hours in a workweek at an overtime rate of pay.

In addition, Plaintiff has presented the Court with evidence in the form of declarations and exhibits which establish that, at a minimum, between November 28, 2014 through April 11, 2016, Defendant's uniform and unlawful policy in practice was to not compensate Office and Warehouse Employees, including Plaintiff, for break or rest periods of short duration, *i.e.* twenty (20) consecutive minutes or less. (Potteiger Decl., Ex. 4, Fig. 1.)

Accordingly, Plaintiff has met her burden at the conditional certification stage by demonstrating that she and all other non-exempt Office and Warehouse Employees were uniformly subject to and victims of Defendant's unlawful rounding and compensation practices. *See Jirak*, 566 F.Supp.2d at 848 (N.D. Ill. 2008); *see also see also Adair*, 2008 WL 4224360, at *3.

In response, Defendant does not dispute the applicability of the lenient standard[2] applicable at the conditional certification stage or deny that, at a minimum, all of its Office and Warehouse Employees at its Sturtevant, Wisconsin facility were subject to these unlawful rounding and compensation practices. (*See* Opposition Brief ("Opp. Brf.,") ECF No. 48, p. 13.) In other words, Defendant does not present any evidence or arguments opposing conditional certification.

Instead, Defendant's arguments inexplicably skip to the "second step" of the two-step process adopted by courts for determining whether an FLSA lawsuit should proceed as a collective action, or to those not applicable until the certification/decertification stage. *See Jirak*, 566 F.Supp.2d at 847; *see also Adair*, 2008 WL 4224360, at *8. At that second stage, which does not take place until after conditional certification has been granted and the opt-in process is completed, "the Court must reevaluate the conditional certification 'to determine whether there is a sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Jirak*, 566 F.Supp.2d at 848 (*citing Heckler v. DK Funding*, 502 F.Supp.2d 777, 779 (N.D. Ill. 2007). Defendant's arguments are therefore premature, because <u>only after</u> "potential plaintiffs have been given a chance to 'opt-in' to the collective action and discovery is complete [may] the court more rigorously review whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action." *Smallwood v. Illinois Bell Tel. Co.*,

---

[2] *See* Defendant's Brief in Opposition to Motion for Conditional Certification of Class ("Opposition Brief"), ECF No. 32 ("Opp. Br."), p. 13.

710 F.Supp.2d 746, 750 (N.D. Ill 2010); *see also Brabazon v. Aurora Health Care, Inc.*, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011).

Thus, because Plaintiff has demonstrated to the Court that, at a minimum, Plaintiff and all other non-exempt Office and Warehouse Employees who worked at Defendant's Sturtevant, Wisconsin location were subject to and victims of Defendant's common timekeeping and compensation practices, and because Defendant does not genuinely dispute the existence and commonality of such practices, this Court should grant Plaintiff's motion for conditional certification, conditionally certify the collective as identified by Plaintiff, and authorize and order that notice be provided to such putative collective members.

**I.     DEFENDANT'S OPPOSITION WAS UNTIMELY AND PURSUANT TO CIVIL L. R. 7(d) SHOULD BE SUMMARILY DENIED.**

Pursuant to the parties' November 30, 2018 *Stipulation* (ECF No. 45), "Defendant's response to *Plaintiff's Motion for Conditional Certification and Authorization of Notice to Similarly-Situated Persons Pursuant to 29 U.S.C. § 216(b)* (ECF No. 23) [shall] be filed on or before January 21, 2019." This Court accepted the parties' stipulation and in its November 30, 2018 *Order* required the same. As a result, Defendant's response was due on or before January 21, 2019. Defendant failed to file its response until January 22, 2019, presumably because January 21, 2019 was Martin Luther King, Jr.'s birthday, a legal holiday as defined by Fed. R. Civ. P. ("Rule") 6(a)(6)(A).

Rule 6(a)(1)(C) reads, "[w]hen the period is stated in days or a longer unit of time: include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Defendant misapplied Rule 6.

"Computation under Rule 6(a), by its very nature, is only necessary when a court orders something to be done in a particular number of days." *Fleischhauer v. Feltner*, 3 F.3d 148, 151 (6th

4

Cir. 1993). In *Fleischhauer*, the plaintiffs' fee request was ordered due on February 1, 1992, a Saturday. *Id.* Plaintiffs did not file the fee petition until February 3, 1992, a Monday. *Id.* The court held that the district court's order:

> [D]id not require the plaintiffs to file something within ten days, for example, but rather required the plaintiffs to file all documents the court was to consider by February 1. We construe this to mean that February 1 was a final deadline. Because February 1 fell on a Saturday does not invalidate the judge's order, nor did it extend the time by reason of local court or federal rules to February 3.

*Id. See also, Sizemore v. State of New Mexico Dep't of Labor,* 182 F. App'x 848, n. 5 (10th Cir. 2006).

As in *Fleischhauer,* this Court did not order an act to be done within a period of, for example, 60 days. Rather, Defendant specifically selected January 21, 2019 and this Court ordered Defendant to submit its response in accordance with Defendant's request. As a result, January 21, 2019 was the deadline by which Defendant's response was due and not January 22, 2019.

The Supreme Court has noted in analogous context that while deadlines are inherently arbitrary, despite the potential harshness of their application, deadlines must be enforced in the absence of equitable remedies. *United States v. Locke*, 471 U.S. 84, 94–95 (1985). Whether equitable remedies exist in this case would fall within the ambit of Rule 6(b)(1)(B); however, Defendant's conduct does not rise to the level of excusable neglect.[3]

---

[3] "The excusable neglect standard <u>can never</u> be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules. The term 'excusable neglect' … refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." (emphasis added). *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133–34 (7th Cir. 1996); see also *United States v. Dumont*, 936 F.2d 292, 294–95 (7th Cir. 1991); *Albedyll v. Wisconsin Porcelain Co. Revised Retirement Plan*, 947 F.2d 246, 253 (7th Cir. 1991); *Cange v. Stotler & Co.*, 913 F.2d 1204, 1212–13 (7th Cir.1990); *Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 911–13 (7th Cir. 1989); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 602 (7th Cir. 1987). "A simple case of miscalculating a deadline is not a sufficient reason to extend time," nor does "an unaccountable lapse in basic legal knowledge" constitute legally-justifiable excusable neglect. *McCarty v. Astrue*, 528 F.3d 541, 545-545 (7th Cir. 2008); see also *United States v. Guy,* 140 F.3d 735, 735–36 (7th Cir. 1998) (finding inexcusable neglect where experienced federal litigator miscalculated the time to file a notice of appeal because he relied on rules governing procedure in the district court, not in the court of appeals); *Prizevoits*, 76 F.3d at 133-134 (finding inexcusable neglect where experienced federal litigator failed to properly interpret time limit for filing a notice of appeal where plain language of the rule was unambiguous).

Rule 6(a) is unambiguous. Defendant's misinterpretation of Rule 6(a) does not constitute excusable neglect, and pursuant to Civil L. R. 7(d), this Court should strike Defendant's response and grant Plaintiff's Motion for Conditional Certification. This result is appropriate because Defendant will not be deprived of any substantive rights. Plaintiff's motion is purely a procedural one. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence [of which] is the sending of court-approved written notice to employees.")

## II. AT A MINIMUM, ALL OFFICE AND WAREHOUSE EMPLOYEES WHO WORKED AT DEFENDANT'S STURTEVANT, WISCONSIN FACILITY ARE VICTIMS OF DEFENDANT'S UNIFORM, UNLAWFUL TIMEKEEPING AND COMPENSATION PRACTICES.

Plaintiff has presented the Court with evidence in the form of declarations and exhibits which establish that, at a minimum, Defendant uniformly applied an unlawful, non-neutral rounding policy to the detriment of all of its non-exempt Office and Warehouse Employees at Defendant's Sturtevant, Wisconsin facility. Defendant does not, and cannot, dispute that it utilized such a non-neutral rounding policy. In fact, Defendant does not even address 29 C.F.R. § 785.48(b).

29 C.F.R. § 785.48(b), as omitted from Defendant's response, states:

> 'Rounding' practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Here, Defendant's own business records evince the fact that Defendant impermissibly rounded time cards to Defendant's benefit and to the detriment of all Office and Warehouse Employees. (Declaration of David M. Potteiger ("Potteiger Decl."), Ex. 4.)

Moreover, Defendant fails entirely to address Plaintiff's proof in the form of declarations and exhibits which establish that, at a minimum, Defendant unlawfully failed to pay all of its non-exempt Office and Warehouse Employees at Defendant's Sturtevant, Wisconsin facility for break or rest periods of short duration, *i.e.* less than consecutive 20 minutes, in violation of 29 C.F.R. §785.18.

"Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They <u>must be counted as hours worked</u>. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time." *Id.* (emphasis added.) Defendant cannot legitimately dispute that it failed to compensate Office and Warehouse Employees for rest periods of short duration because the Defendant's own business records undeniably demonstrate its unlawful practice.

Because its Defendant's own time records unmistakably establish violations of the FLSA, Defendant is forced to argue that "time keeping discrepancies are unavoidable … and time clock records are not a perfect demonstration of actual time worked," citing *Kolish v. Metal Techs., Inc.,* 2017 WL 525965 (S.D. Ind. Feb. 8, 2017). (Brief in Opposition to Motion for Conditional Certification of Class ("Opp. Brf."), p. 13.) Defendant's reliance on *Kolish* is misplaced.

*Kolish* does not stand for the proposition that *all* time records are unreliable. In *Kolish,* the court found that the time records proffered by the plaintiff, in that specific case, were unreliable. The court reached this conclusion because the records indicated that "she [the plaintiff] clocked out and back in for lunch in the same minute on 88 different occasions.… In addition, Metal Technologies filed declarations from twenty-two employees that state that despite what the records show, they always took thirty-minute lunch breaks." *Id.* at 6-7. So, while the time records in *Kolish* may have been unreliable, those same considerations do not exist here.

In a strained attempt to apply *Kolish* to the facts of the case, Defendant seeks to undermine its own records by suggesting that "[e]mployees punch in before getting coffee or removing their coats in the morning out of convenience; employees forget to punch out at the beginning of lunch and break times because they are distracted or hungry; employees punch in from breaks early and use the restroom." (Opp. Brf., p. 13.) However, there is *no evidence* that Office and Warehouse Employees kept time in this manner, and Defendant cites to nothing in the record to support its claim.

To the contrary, Defendant's testimony establishes the reliability of its time cards. "At the end of a pay period, Ms. Malicki's supervisor would review the time card … and either approve the hours provided or make any adjustments requested by Ms. Malicki. Once approved, Ms. Malicki's time was entered into a spreadsheet that was sent to payroll for processing." (Potteiger Decl., Ex. 1, p. 8, Answer to Interrogatory ("Int. Ans.") No. 13.) In other words, Defendant acknowledges that its timecards are not only accurate, but also that Defendant relied upon these records in determining Office and Warehouse Employees' compensation.

Defendant next shifts its attention to Plaintiff's deposition, arguing that "the record demonstrates a denial by Ms. Malicki of any payment problems existing during the time card period." (Opp. Brf., p. 5.) Defendant then "cites" to Plaintiff's deposition transcript. Defendant's argument and its citations are unfounded.

First, Plaintiff's counsel interposed numerous objections to the form of questions Defendant's counsel asked, specifically because Defendant's counsel's questions sought legal contentions and conclusions. (Declaration of Christopher Conrad ("Conrad Decl."), ECF No. 34, Ex. 2 ("Malicki Dep."), pp. 18:18; 20:14; 20:20; 22:8; 31:18.) Defendant omits these objections in its citations.

Second, Defendant omits essential testimony that supports Plaintiff's Motion for Conditional Certification. For example, Plaintiff testified, "[w]hen we had the punch cards, you had to punch out

8

no matter what. You always punched in in the morning, punched out at lunch, punched back in from your lunch, and punched back out…. I always punched out for lunch because I was told I needed – 'You punch out for lunch and you punch back in.'" (Malicki Dep., pp. 26:23; 27:7.) This testimony supports the fact that the time cards are the best evidence of time actually worked, particularly during rest breaks of short duration, *i.e.* twenty (20) consecutive minutes or less.

Last, Defendant conflates times when Plaintiff testified that she "worked through" lunch, *i.e.* did not take any rest break, and times when Plaintiff took a rest break of short duration. There is no indication in the record that Plaintiff understood that she was entitled to compensation in those instances where she took a rest break of short duration, nor would one expect the Plaintiff to understand or appreciate a sophisticated regulation.

On the whole, this case is more analogous to *Weil v. Metal Techs., Inc.*, 2016 WL 286396 (S.D. Ind. Jan. 25, 2016). In *Weil,* the plaintiffs argued that Metal Technologies engaged in an unlawful rounding practice and similarly failed to pay its employees for rest breaks of short duration. The court granted plaintiffs' motion for conditional certification in part and denied the motion in part.

With respect to Metal Technologies' unlawful rounding, the court found that "the payroll records also demonstrate that most of the employees had their recorded time rounded down when they clocked in prior to their scheduled shift and rounded up when they clocked out after their scheduled shift. This evidence shows that the rounding policy benefited Metal Technologies." *Id.* at \*6. The court granted plaintiffs' motion for conditional certification with respect to Metal Technologies' unlawful rounding practice. For the same reasons, this Court should grant Plaintiff's Motion for Conditional Certification.

Also in *Weil,* the court denied the plaintiffs' motion for conditional certification with respect to rest breaks of short duration. In doing so, the court held, "Plaintiffs have identified and articulated

a common policy or practice that as applied to some employees may well constitute an FLSA violation…. However … Ms. Fulk's records – the very records on which she bases her claims – demonstrate that she has never taken a lunch break of twenty minutes or less. *Id.* at *9. Here, Plaintiff's time records establish that she did take rest breaks of short duration, and as a result this Court should grant Plaintiff's Motion for Conditional Certification. Consider the following testimony.

> A      There were times where I punched out and needed to punch back in when I was on lunch. I punched out and was out on lunch and somebody had come out and got me because I needed to do something, so then I'd punch back in. So there are times that I only had a short lunch.
>
> Q      How often did that happen?
>
> A      I don't know. I'd have to look back at the time sheets. I mean, it's – I don't know. Two, three times a month maybe. (Malicki Dep., 86:4)
>
> ***
>
> A      Yeah. I would punch out and go outside. I was outside for maybe five, ten minutes, and then they would come get me, and I'd punch back in when I'd come back in because I didn't take the whole 30. (Malicki Dep., 88:15)
>
> ***
>
> A      A lot of times we just eat at our desk, our lunch.
>
> Q      Eating at your desk is understandable. I mean, you've got a big desk –
>
> A      Right. You can work while you eat. (Malicki Dep., 91:4)

Plaintiff's deposition testimony buttresses her claim that she was not compensated for rest breaks of short duration or meal periods that were not duty-free and did not last at least thirty (30) minutes in duration. Defendant's time records support Plaintiff's testimony and establish that other Office and Warehouse Employees were similarly not compensated for rest breaks of short duration.

In short, Plaintiff has made the minimum showing necessary to establish that, at a minimum, she and other non-exempt Office and Warehouse Employees at Defendant's Sturtevant, Wisconsin

facility were victims of the same common policy in practice in which Defendant deprived them of compensation at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek by rounding, deducting, and/or failing to count recorded and compensable time as well as failing to compensate said Employees for rest breaks of short duration, *i.e.* less than 20 consecutive minutes. For these reasons, conditional certification is appropriate at this stage in the proceedings. Because Plaintiff has met her burden, this Court should grant Plaintiff's Motion for Conditional Certification.

### III. THE *DE MINIMIS* DOCTRINE HAS NO APPLICATION AT THE CONDITIONAL CERTIFICATION STAGE OF THE PROCEEDINGS.

Defendant next argues that Plaintiff's "potential damages" are comprised of "*de minimis* amounts, for which recovery should be barred." (Opp. Brief., p. 17.) Defendant's argument is not well-founded and is inappropriate at the conditional certification stage.

First, Defendant claims that "by Ms. Malicki's own calculations, she was allegedly deprived $167.40." (*Id.*) Defendant misstates Plaintiff's alleged damages. Plaintiff provided this Court with proof in the form of declarations and exhibits to establish that she and other Office and Warehouse Employees were victims of the same common compensation policy in practice. However, Plaintiff's proof represents selective workweeks in which Plaintiff and other Office and Warehouse Employees were improperly compensated. These are mere exemplars, not exhaustive proof of each and every workweek in which Defendant unlawfully failed to compensate Plaintiff and other Office and Warehouse Employees because such proof is not required at this stage of the proceedings.

Second, even if Plaintiff's sole proof was these individual workweeks, those exemplars show that an employee "clocked in" for the work day at 7:28 a.m. and "clocked out" for the work day at 5:58 p.m. (*Id*.) After deducting a 30-minute unpaid meal break, the employee's actual time worked was a total of ten hours (10:00), yet Defendant only compensated said employee for nine (9) hours

and 15 minutes of work. (9:15). (Potteiger Decl., Ex. 4, Fig. 1.) Under no reasonable construction of the *de minimis* doctrine is forty-five (45) minutes trivial or a matter of mere seconds.

Third, Defendant's argument is improper at the conditional certification stage of the proceedings. For purposes of the present motion, Defendant's argument should be summarily rejected as Plaintiff need only establish a minimum showing that, at a minimum, she and other non-exempt Office and Warehouse Employees at Defendant's Sturtevant, Wisconsin facility were victims of the same common policy in practice in which Defendant deprived them of compensation at an overtime rate of pay for hours worked in excess of forty (40) in a workweek by rounding, deducting, and/or failing to count recorded and compensable time, as well as by failing to compensate employees for rest breaks of short duration, i.e. less than 20 consecutive minutes. Plaintiff has done so.

## IV. THE CONTENT AND TERMS OF PLAINTIFF'S PROPOSED NOTICE IS PROPER AND SUBSTANTIALLY SIMILAR TO OTHERS APPROVED BY THIS COURT

Plaintiff continues to rely upon her principal submission as support for her position that the proposed notice is reasonable and appropriate under the circumstances. However, Plaintiff highlights that her proposed notice is substantially similar to that approved by this Court in *Frank v. Gold Cross Ambulance Serv., Inc.*, Case No. 13-CV-1149, as previously attached as Exhibits 6 and 7 to the Declaration of David M. Potteiger (ECF No. 26).

Plaintiff believes that no deviations to Plaintiff's proposed notice are necessary or warranted in this matter.

## CONCLUSION

For all of the foregoing reasons, this Court should conditionally certify this action as an FLSA representative action on behalf of a putative collective of non-exempt Office and Warehouse Employees employed by Defendant as defined by Plaintiff. Furthermore, this Court should authorize Plaintiff's counsel to issue its proposed notice in the manner and method requested and

order Defendant to provide Plaintiff's counsel with the last known addresses of all putative collective members, as well as the telephone number, email address, and date of birth of any putative collective class member whose notice is returned by the post office as undeliverable, so that Plaintiff's counsel may provide effective notice to such individual.

Dated this 4th day of February, 2019.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

 s/ *David M. Potteiger*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009
Matthew J. Tobin, State Bar No. 1097545

WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com
mtobin@walcheskeluzi.com