UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JODIE L. MALICKI
on behalf of herself and all
others similarly situation,                    Case No. 17-CV-1674

                Plaintiff
v.

LEMAN USA, INC.,

                Defendant

---

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

### BACKGROUND

Throughout her July 18, 2018 deposition, Ms. Malicki continually, repeatedly, and with great specificity, testified that her claims against LEMAN USA, Inc. were <u>solely</u> related to an electronic timekeeping system named "UltiPro" that LEMAN adopted on April 11, 2016, despite her total inability to identify one fact supporting those claims. *See*, Affidavit of Christopher J. Conrad, August 27, 2018, Exhibit 1. That Ms. Malicki's original complaint was so devoid of fact as to render it frivolous was confirmed when, on July 27, 2018, she filed a Motion for Conditional Certification that wholly and completely ignored the entire UltiPro system, seeking, instead, to certify a class based on the manual punch card system LEMAN used before it adopted UltiPro. R.23. Ms. Malicki's motion abandoned Counts 1 and 2 of her Complaint[1], and LEMAN filed a Motion for Summary Judgment seeking dismissal. R.33.

---

[1] Counts 1 and 2 of the Original Complaint are reproduced in Counts 1 and 2 of Ms. Malicki's Amended Complaint. R. 43.

1

Rather than respond to LEMAN'S Motion seeking dismissal of the factually groundless UltiPro claims, Ms. Malicki filed a motion to amend her complaint, seeking to assert a cause of action bringing the time card period before the Court. R.24. This Court subsequently granted Ms. Malicki's Motion to Amend, and determined LEMAN'S summary judgment motion moot due to the inclusion of the Amended Complaint.

The Amended Complaint includes the baseless UltiPro claims that were originally asserted by the plaintiff back in November, 2017. R.1; R.43. Despite the fact that the plaintiff has known and admitted since July, 2018 that the UltiPro claims in the Original and now Amended Complaint are wholly without any factual support, plaintiff has maintained those causes of action. Plaintiff's insistence on continuing causes of action that, by plaintiff's own acknowledgment lack any factual support, demands dismissal of those claims.

## FACTS

Ms. Malicki began working in the LEMAN warehouse through a temporary staffing agency in January 2015. She was hired directly by LEMAN in April 2016. Affidavit of Susan Satula, August 27, 2018, ¶ 10 (R. 34, Attachment 5); Malicki deposition, pages 9-10. She worked as material handler in the warehouse for roughly six months before sustaining an injury that made her unable to do any physical lifting. When she returned to work, LEMAN accommodated Ms. Malicki's restrictions and transferred her to the office as a Client Services Representative, under the supervision of Kelly Danielski. Satula Affidavit, ¶ 11. Ms. Malicki was promoted to Client Services Lead/Supervisor on February 9, 2017, where she worked until she was terminated on August 1, 2017. Affidavit of Anja Nielsen, ¶ 8 (R. 34, Attachment 3). Satula Affidavit, ¶ 13.

Before April 10, 2016, LEMAN utilized a manual punch card system to track employee hours worked and calculate their pay. Affidavit of Susan Satula, ¶ 13. While the electronic time management software system called "UltiPro" was implemented on April 11, 2016 to record time for all non-exempt employees, (Satula Affidavit, ¶ 15) Ms. Maicki was part of a test group that used the electronic system to record and track her hours beginning in January, 2016. Satula Affidavit, ¶ 9.

The UltiPro system continued a LEMAN policy that automatically deducted ½ hour from all non-exempt employee's time for shifts over five (5) hours so that employees were not punching in and out while they remained on LEMAN's campus. Satula Affidavit. This was no secret to Ms. Malicki, who testified that she was informed of this automatic deduction policy when she was hired. Malicki deposition, page 26.

It was Ms. Malicki's practice to review her manual time cards, add up her hours, and go over those hours with her supervisor, all with the goal of making sure that her time was accurately recorded so her pay was accurate. Malicki deposition, page 27. Ms. Malicki specifically testified how she regularly reviewed and certified the hours listed on her physical time cards to make sure that they were accurate. Malicki deposition, page 35.

Ms. Malicki testified that during the punch card period when she worked in the warehouse there were no lunches that she worked through, and therefore, no claims arising from that time period. Malicki deposition, pages 20, 23. At times during her work in the office under Kelly Danielski, Ms. Malicki claims that she did work through her lunch hours. Whenever this occurred, Ms. Malicki would write on her physical time card "no lunch" to indicate to Ms. Danielski that the automatic deduction should not be applied. Malicki deposition, page 28, page 30. The intention of writing these notations on her time card was for Ms. Malicki to ensure she

3
379640-11948
Case 2:17-cv-01674-NJ   Filed 02/19/19   Page 3 of 13   Document 51

was paid for the hours that she worked. Malicki deposition, page 32. This procedure apparently worked very well, as Ms. Malicki testified:

> Question: As we go through the time card period at LEMAN, was this -- if you forgot to punch out or if you had to take some extra time or if you worked through your lunch, you would make a notation on the time card and then it would be taken care of, right?
>
> Answer: Yes.

Malicki deposition, page 38.

LEMAN's ½ hour deduction continued once the UltiPro system was enacted. Malicki deposition, page 38; Satula Affidavit, ¶ 17. Ms. Malicki was actually one of the "test" users helping LEMAN iron out bugs or defects in the UltiPro system before it went live. Satula Affidavit, ¶ 8. Although LEMAN's manner of keeping time changed, LEMAN's policy about employees making up time for outside appointments or working through lunch did not. Malicki deposition, page 31. Ms. Malicki's procedure of certifying her hours worked and verifying her earnings actually became easier, because the UltiPro system allowed her to look at her recorded time whenever she had access to a computer. Malicki deposition, pages 41-42. Ms. Malicki could be sitting on her couch with a laptop computer, log in to the UltiPro system from her home, and review all of her time and payroll payment records. Malicki deposition, page 53. Ms. Malicki even testified that she printed off and retained a number of her UltiPro time records, which she used to compare to her payment history so that she could ensure that she was paid for the time she worked. Malicki deposition, page 53.

One small change resulting from UltiPro was that instead of writing "no lunch" on her physical time card, Ms. Malicki would, instead, send an email to her supervisor if she worked through her break. Malicki deposition, page 42. Apparently this system was just as effective as the time card notations, because Ms. Malicki testified that she is unaware of any time that she

may have worked through lunch when supervised by Kelly Danielski that she was not paid for the time that she worked. Malicki deposition, page 43. When Anja Nielsen took over as Ms. Malicki's supervisor for Kelly Danielski there was only a slight modification to this timekeeping practice. Ms. Nielsen was more proactive, and would often correct timekeeping errors before the employees had to send her an email. Malicki deposition, page 50. On the occasions when Ms. Nielsen did not preemptively change an employee's time entry, the employees would send an email and the error would be corrected:

> Question: So how would you deal with that situation to make sure that you got paid?
>
> Answer: We would send an email or tell Anja.
>
> Question: And would Anja then correct it?
>
> Answer: Yes.
>
> Malicki deposition, page 51.

Apparently Ms. Nielsen was just as devoted to making sure those she supervised were paid as Ms. Danielski:

> Question: Are you aware of any situation where you took a complaint to Anja about time that you worked for which you were not paid that didn't get fixed by LEMAN?
>
> Answer: I don't believe so.
>
> Malicki deposition, page 57.

Testimony demonstrates that Ms. Malicki followed the procedures set forth in LEMAN's Employee Handbook to ensure all employees were properly compensated. Satula Affidavit, Ex. 1, 3. Ms. Malicki reviewed her work hours and how they were recorded under both the punch card and UltiPro systems, and if there was an error, or any modification needed, she brought the concern to her supervisor's attention and it was fixed.

5

379640-11948
Case 2:17-cv-01674-NJ    Filed 02/19/19    Page 5 of 13    Document 51

Question: And that's the procedure that you followed when you were at LEMAN, right? Whether it was when you were working in the warehouse or you were working under Kelly or you were working under Anja, if you had a time card error, you took it to your supervisor, right?

Answer: Yes.

Malicki deposition, page 59.

Even after Ms. Malicki's time was entered by her into UltiPro, checked by her supervisor, certified by Ms. Malicki, and submitted to payroll, there was still another opportunity for Ms. Malicki to compare her time worked to the payment she received, and obtain any necessary adjustments. *See*, Affidavit of Janice Larsen, (R.48, Attachment 1, ¶¶ 4, 5). As Ms. Larsen, the primary payroll coordinator for LEMAN demonstrates, Ms. Malicki availed herself of this "failsafe" procedure by sending an email to Ms. Larsen asking whether or not she had been properly paid for all the hours that she worked. Larsen Affidavit, Ex. 1. Ms. Malicki's knowledge and use of the corrective features in LEMAN'S timekeeping system, coupled with that system's dependence on the employees, themselves, certifying time worked before submission to payroll, not to mention Ms. Malicki's knowledge and use of LEMAN'S "fail safe" corrective procedure, further illustrates the complete lack of any factual merit to the claims Ms. Malicki has advanced.

LEMAN's cooperative procedure to ensure proper payment for hours worked using UltiPro was not only followed by Ms. Malicki, it was <u>enforced by Ms. Malicki</u> over the individuals that she supervised. On February 9, 2017, Ms. Malicki was promoted to Client Services Supervisor. Neilsen Affidavit, ¶¶ 8-12. As part of her supervisory responsibilities, Ms. Malicki trained new Client Service hires, including Adrienne Niemi, to use UltiPro. Nielsen Affidavit, ¶ 9; ¶ 10; Affidavit of Adrienne Niemi, August 27, 2018, ¶ 2 (R.34,

Attachment 7). When Ms. Niemi encountered a time card error, she asked Ms. Malicki what to do, then followed LEMAN procedure and reported that error to her ultimate supervisor, Anja Nielsen, copying in her team lead, Jodie Malicki. Nielsen Affidavit, Ex. 2  Ms. Niemi explained in this email how she unsuccessfully tried to use the automatic ½ hour deduction "override" feature in UltiPro that Ms. Malicki instructed her on, which allowed employees to punch out, wait a moment or two, and then punch back in. This punch in/out process eliminated the automatic ½ hour deduction, ensuring that the employee was properly paid for time worked. When notified that this "override" procedure did not work for Ms. Niemi, Ms. Nielsen responded to Ms. Niemi and Ms. Malicki that she would correct the error to ensure that Ms. Niemi was paid for working through her lunch hour. Nielsen Affidavit, Ex.2.

Although Counts 1 and 2 of the Amended Complaint claim that LEMAN's ½ hour deduction in UltiPro deprived Ms. Malicki of earned overtime, Malicki's employment records demonstrate that in the two years she was actively working with LEMAN she was paid 196.25 hours in overtime. (Satula Affidavit, Ex. 5; Malicki Deposition, Ex. 19.) Despite being provided the detail of her hours and how she was paid, Ms. Malicki is still, over a year after this action has been filed, unable to identify any time that she worked but was not paid because of the UltiPro meal break deduction. She specifically testified she was well aware of LEMAN's policies and procedures, she used those procedures to verify her hours and her pay, and yet she never notified her supervisor that she was performing work for which she was not getting paid. Malicki Deposition, page 109.

Ms. Malicki abandoned causes of action 1 and 2 in her Amended Complaint because those claims lack any factual support, and summary judgment dismissing those claims is appropriately granted by this Court. LEMAN should not be forced to continue to defend claims

that for the past seven months plaintiff, herself, has abandoned, and yet for some reason refuses to dismiss on her own.

## ARGUMENT

**I. THE PLAINTIFF HAS FAILED TO PRODUCE ANY FACTS WHICH SUPPORT HER FIRST OR SECOND CAUSES OF ACTION.**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact." Fed. Rule. Civ. Proc., 56. Rule 56 does not require the moving party to negate its opponents' claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Once a *prima facie* case for summary judgment has been presented, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Id*. quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is known as the "put up or shut up" stage of the litigation, where the nonmoving party must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), reh'g and suggestion for reh'g en banc denied (Sept. 28, 2017) quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

To succeed under the FLSA and support the UltiPro based claims (Counts 1 and 2) in the Amended Complaint, Ms. Malicki must present specific facts that demonstrate:

1. While on her unpaid meal time after April 11, 2016, she performed compensable work for which LEMAN was the predominant beneficiary;

2. A reasonable estimate supported by specific facts of the time spent working through lunch; and

3. That LEMAN had actual or constructive knowledge of her overtime work and failed to compensate her.

8

*Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986); see also *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593 (7th Cir. 2008).

While the plaintiff makes numerous conclusory statements in her pleadings claiming that LEMAN denied her overtime compensation for time she spent working during her meal breaks, she has failed to provide any evidence that actualwork was performed during these times, any estimate of the time she worked but was not compensated, or any evidence of LEMAN's actual or constructive knowledge as to this time spent working without payment. *See*, generally, Malicki Deposition. LEMAN and this Court are both left guessing as to when these hours allegedly occurred, how much these hours amount to, and what type of work was being done while Ms. Malicki was allegedly working through lunch.

The testimony that Ms. Malicki provided during the course of her deposition actually confirms that no legitimate issues of fact exist that would entitle her to a trial on the merits of her two UltiPro based claims. Ms. Malicki was paid over 192 hours of overtime over her two years while employed by LEMAN, and yet can identify no overtime she worked for which she was not paid. Malicki deposition, pages 20-21. She testified repeatedly that she was unaware of any unpaid time that she called to her supervisor's attention that was not properly corrected, and for which she was not properly compensated. Malicki deposition, pages 38, 39, 41, 42, 59, 100, 106.

Ms. Malicki testified repeatedly that when using the UltiPro system she monitored her hours, that she specifically logged into UltiPro and printed off copies of her time records to verify that every hour that she worked was properly accounted for and paid, and that to this day, despite still having access to those UltiPro records, she can identify no time where she worked through break period that was automatically deducted from her working hours by UltiPro, that

9
379640-11948
Case 2:17-cv-01674-NJ   Filed 02/19/19   Page 9 of 13   Document 51

was not corrected, or for which she was not properly compensated. Finally, Ms. Malicki has offered no explanation for how, after she, herself, certified her hours and had access to her time records, that she never made use of any of the numerous opportunities LEMAN made available to its employees to correct time keeping errors, either through their direct supervisor, or by complaining to Janice Larsen.

As Ms. Malicki acknowledged when she failed to even include the allegations in Counts 1 or 2 of her Amended Complaint within her motion to certify a class of defendants, facts necessary for Ms. Malicki to meet her burden of proof under these claims are not just lacking, the necessary facts are non-existent. Summary judgment dismissing those claims is appropriately granted by this Court.

## II. MS. MALICKI'S SECOND CAUSE OF ACTION ALLEGING A WISCONSIN WAGE PAYMENT CLAIM IS PROPERLY DISMISSED BECAUSE NO FACTS SUPPORTING THAT CLAIM EXIST.

Under Wisconsin law, a party advancing a wage payment and collection law claim must demonstrate:

1. That she performed personal services that entitle her to the wage; and

2. Her entitlement to the wages must be clear and already determined by either an agreement or an employer policy.

*Sliwinski v. City of Milwaukee*, 2009 WI App. 162, 777 N.E. 2d 88 (Ct. App. 2009).

Ms. Malicki's UltiPro claims under Wisconsin statutes suffer the same fatal defect as her FLSA claims. Ms. Malicki cannot demonstrate any time that she worked for LEMAN's benefit for which she was not properly compensated. Conclusory allegations in the Complaint are insufficient to meet Ms. Malicki's burden of proof. *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007). Ms. Malicki must identify specifically articulatable facts showing where she was not paid for time that she worked under the UltiPro timekeeping sytem. *Grant*, *supra.* A simple

review of Ms. Malicki's deposition testimony reveals that not only is she unable to meet this burden, her testimony actually disproves these allegations.

It is also Ms. Malicki's burden to provide evidence demonstrating that LEMAN violated its own policy that employees be compensated for all time worked, including receiving appropriate overtime. *Frye v. Baptist Mem'l Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sept. 27, 2010), aff'd sub nom. *Frye v. Baptist Mem'l Hosp., Inc*., 495 F. App'x 669 (6th Cir. 2012).  When an employee keeps complete and accurate records of wages and hours, a plaintiff "may easily discharge [her] burden [to prove overtime] by securing the production of those records." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946) superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005). In discharging her duty, the plaintiff must provide "definite and certain evidence that she performed work for which she was not properly compensated." *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 594–95 (7th Cir. 2008). Here, though the Plaintiff claims to have UltiPro time records of her own (in addition to the full and complete UltiPro time records LEMAN provided) Ms. Malicki was unable to indentify *any* hours for which she was not properly paid during the UltiPro period.

The 7th Circuit has determined that when employees pay such particular attention to their time, and interact regularly with their supervisors in order to ensure that their time is correct, it is virtually impossible for an employer to have any reason to know, much less suspect, that additional work or overtime work is being performed by the employee for which they are not being compensated.  *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173, 177 (7th Cir. 2011).  The importance of Ms. Malicki's failure in this regard must be considered in conjunction with her repeated testimony that she was aware of LEMAN'S process, used that process to certify her

11

379640-11948
Case 2:17-cv-01674-NJ   Filed 02/19/19   Page 11 of 13   Document 51

time records and is unaware of any alleged timekeeping issue that she called to LEMAN's attention that was not properly remedied by her supervisor. Malicki deposition, pages 38, 39, 41, 42, 59, 100, 106. Even if Ms. Malicki could somehow identify timekeeping errors that were not resolved between herself and her supervisor, Ms. Malicki would not be able to overcome her knowledge that Janet Larsen could correct timekeeping and payment errors after time cards were submitted and the employees were compensated. Larsen Affidavit. Ms. Malicki's email to Ms. Larsen attempting to verify that her paycheck matched the hours Ms. Malicki certified demonstrates Ms. Malicki's knowledge of and use of this system, and confirms Ms. Malicki's personal, real time tracking of the hours that she worked and how much she was supposed to have been paid.

The testimony Ms. Malicki provided during her deposition demonstrates that there are no issues of fact that are in dispute about the UltiPro claims. Ms. Malicki makes conclusory allegations that she wasn't paid overtime under this system, and yet has failed, at every opportunity, to provide facts justifying her claims. The record of Ms. Malicki's employment by LEMAN, her demonstrated knowledge of the timekeeping system including the automatic ½ hour deduction, her use and instruction of others in the "override" and supervisor modification procedures, and her use of LEMAN'S "fail safe" procedure fun by Ms. Larsen all worked to ensure she was paid if she ever did work during her lunch hour and disprove the allegations in Counts 1 and 2 of the Amended Complaint.

## CONCLUSION

Discovery undertaken by the parties demonstrates that the conclusory allegations in Ms. Malicki's Complaint lack any factual support for her UltiPro claims. Ms. Malicki's deposition testimony, as well as the numerous exhibits presented to Ms. Malicki during the course of that

12

deposition, establish that contrary to the allegations in the Complaint, Ms. Malicki was fully informed of LEMAN's timekeeping system and utilized that system appropriately to ensure that she was paid for all hours worked. Even after filing this suit, Ms. Malicki retained time records that would allow her to identify support for the claims that she has made, and yet despite these many opportunities to support her claims, she has not identified one fact justifying the continuation of Counts 1 or 2 in her Amended Complaint. The testimony provided and the evidence generated demonstrates that Ms. Malicki was paid by LEMAN for all hours worked and that any UltiPro timekeeping error was promptly and properly corrected. Counts 1 and 2 of the Amended Complaint are properly dismissed.

Dated this 19th day of February, 2019.

                DeMARK, KOLBE & BRODEK, S.C.
                Attorneys for Defendant


              By:  */s/ Christopher J. Conrad*
                 Christopher J. Conrad
                 State Bar No. 1011743

<u>Mailing Address</u>
7418 Washington Avenue
Racine, WI 53406
Phone: (262) 886-9720
Fax: (262) 886-3074