UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JODIE L. MALICKI
on behalf of herself and all
others similarly situated,                                Case No. 17-CV-1674

               Ms. Malicki

v.

LEMAN USA, INC.,

               Defendant

## LEMAN USA'S PROPOSED FINDING OF FACT

Defendant LEMAN USA, Inc. provides the following as her Proposed Finding of Facts in support of its Motion for Partial Summary Judgment:

1. LEMAN USA, Inc. (LEMAN) is a transportation, logistics and order processing company headquartered in Sturtevant, Wisconsin. (R. 34, Attachment 5, Affidavit of Susan Satula, ¶ 2). In addition to its headquarters location, LEMAN operates seven (7) remote branches across the United States in Charlotte, NC, Houston, TX, Bensenville, IL, PeachTree, GA, Clark, NJ, Torrance, CA, and Miami, FL. (Satula Affidavit, ¶ 2).

2. According to LEMAN's written policy, all non-exempt employees were required to observe a thirty (30) minute uninterrupted meal break period unless they had supervisor permission. (Satula Affidavit, Ex. 1, 3).

3. According to LEMAN's written policy, all non-exempt employees were to be relieved of all work duties during their uninterrupted meal break period. (Satula Affidavit, Ex. 1, 3).

4. LEMAN required that all non-exempt employees be paid for hours worked beyond forty (40) in any given week, at an overtime rate of pay. (Satula Affidavit, Ex. 1, 3).

5. In accordance with its meal break and overtime policies, LEMAN regularly paid overtime to employees who worked over forty (40) hours in any given week. (Satula Affidavit Ex. 5).

6. Jodie Malicki (Ms. Malicki) was originally brought to LEMAN by a temporary agency. She began working for LEMAN in the warehouse of its Sturtevant location in January 2015. She was hired directly by LEMAN on March 2, 2015. (Satula Affidavit, ¶ 10.).

7. Ms. Malicki received a copy of LEMAN's June 2012 employee handbook and signed a receipt on March 2, 2015. (Satula Affidavit, Ex. 2).

8. Ms. Malicki worked in the warehouse at LEMAN until she sustained an injury on April 16, 2015, which required surgery on July 22, 2015. (Satula Affidavit, ¶11; Malicki Deposition, page 10). Upon her return to work on August 25, 2015, Ms. Malicki had work restrictions that LEMAN accommodated by transferring her to the LEMAN office, where she worked as a Client Services Representative supervised by Kelly Danielski. (R. 34, Attachment 1, Affidavit of Christopher J. Conrad, Ex. 1 deposition of Jodie Malicki, July 16, 2018 "Malicki Deposition") page 10, 29; Satula Affidavit, ¶11).

9. Ms. Malicki worked as a Client Services Representative under the management of Kelly Danielski from August 25, 2016 until Kelly Danielski's resignation on June 16, 2016. (Satula Affidavit, ¶ 12 ).

2
374669-11948

10. On June 26, 2016, LEMAN hired Anja Nielsen to replace Ms. Danielski. (Satula Affidavit, ¶ 12).

11. On February 9, 2017, Jodie Malicki was promoted to Client Services Supervisor, where she supervised, trained, and led up to six (6) Client Services Representatives at the Sturtevant location. (Satula Affidavit ¶ 13; Malicki Deposition, page 11).

12. As Client Services Supervisor, Ms. Malicki acted as a "lead" of the department and helped her fellow Client Services Representatives with their daily questions and concerns about customers and LEMAN internal policies and procedures, including timekeeping issues. (Satula Affidavit, ¶ 13; Malicki Deposition, pages 12-13).

13. Ms. Malicki's LEMAN employment was terminated on August 1, 2017. (Satula Affidavit, ¶ 13).

14. Prior to April 2016, the non-exempt employees at LEMAN's Sturtevant location utilized a manual punch card system where they would take a physical punch card and "punch in" at a time clock at the beginning of their days and "punch out" at the end of their work days. (Satula Affidavit, ¶ 8, Malicki Deposition, pages 19-20).

15. During Ms. Malicki's employment prior to April 2016, she punched in on the manual time clock at the start of her day and at the end of her day. (Malicki Deposition, pages 2-27). At the end of the two-week pay period, Ms. Malicki verified her supervisor's totaling of her time so that she would know how many hours she was being paid for that pay period. (Malicki Deposition, pages 32, 35).

16. During Ms. Malicki's employment prior to April 2016, it was her understanding that she did not need to punch out when taking an on-premise lunch break and that a thirty (30)

minute break would be deducted from her worked hours unless a modification was made. (Malicki Deposition, pages 26, 48-49, 60 ).

17. During Ms. Malicki's employment prior to April 2016, it was her understanding that if she left the premises during her meal break she was required to punch out on the manual punch clock. (Malicki Deposition, page 89).

18. When Ms. Malicki worked in the warehouse, she never performed compensable work during her meal break. (Malicki Deposition, page 23-24).

19. When Ms. Malicki worked in the LEMAN offices as a Client Services Representative prior to April 2016, she understood that if she worked through her lunch, she could write "no lunch" on her time card to be paid for the compensable time. (Malicki Deposition, pages 28-32).

20. During Ms. Malicki's employment prior to April 2016, when Ms. Malicki utilized the manual punch card system, she believes she was paid for all the hours she worked. (Malicki Deposition, pages 20-21, 42-43).

21. In March of 2016, Ms. Malicki was asked and agreed to be part of a test group for a computerized time management system, UltiPro, for its time clock functions before it was implemented throughout the LEMAN USA branches. (Satula Affidavit ¶ 8, Malicki Deposition, pages 62-63, Ex. 3).

22. During the UltiPro test period, Susan Satula requested feedback and questions from the test group via group emails, which Ms. Malicki was copied. Included in these group emails was an explanation that the UltiPro system would automatically deduct thirty (30) minutes for lunch as well as a user manual for logging in and out of Ultipro. (Satula Affidavit, ¶ 9; Malicki Deposition, Ex. 3).

23. On April 11, 2016, LEMAN implemented the UltiPro system for time management and provided training for all its U.S. employees on how to use the new time management program. (Satula Affidavit ¶ 15).

24. On April 29, 2016, an email was sent to all Managers notifying them that employees could put notes or messages in the UltiPro System via a "notes" section of the program. (Satula Affidavit, ¶ 16).

25. Under the UltiPro time management system, LEMAN employees were not required to punch in and out for lunch if they took their normal on-site thirty minute lunch. (Satula Affidavit, ¶ 17). LEMAN employees were asked to punch out for lunch if they left the premises or when their lunches were not thirty (30) minutes in length, to override this automatic deduction. (Satula Affidavit, ¶ 17).

26. LEMAN's policy for time card adjustment remained unchanged after the adoption of UltiPro. Ms. Malicki was aware that LEMAN policy required her to review her time records, certify the time she worked, and call to her supervisor's attention any necessary adjustments to the electronic time records. (Malicki Deposition, pages 23-27).

27. Through the UltiPro time management system, LEMAN employees could track their hours visually and print out time sheets both while at work and remotely. (Malicki Deposition, page 21, 53).

28. It was Ms. Malicki's practice to alert her supervisor, Kelly Danielski and, later, Anja Nielsen, of any timekeeping issues, and to her belief either Kelly or Anja corrected any errors to ensure Ms. Malicki was paid for all the hours she worked. (Malicki Deposition, pages 39, 41, 42, 51, 56-57, 93).

29. As the Supervisor of the Client Services department at the Sturtevant branch, Ms. Malicki was responsible for training new LEMAN hires in the Client Services Department. (R. 34, Attachment 7, Affidavit of Adrienne Niemi, ¶ 2). This included instruction on how to use the UltiPro system. (Satula Affidavit, ¶ 13).

30. When Ms. Malicki trained new hires on the UltiPro system, she informed them about the automatic meal break deduction and explained to them how to override that deduction by either punching out and in within a two minute window of time or notifying their supervisor. (Niemi Affidavit ¶ 2, Ex. 1).

31. When employees came to Ms. Malicki with questions about time management, she would refer them to Anja Nielsen, who would make necessary accommodations and time sheet corrections for that employee. (Malicki Deposition, pages 97-100).

32. After Ms. Malicki reviewed her time with her supervisor, and verified that time by submitting her hours worked for payment, she still had the opportunity to correct any errors to ensure that she was fully paid by contacting LEMAN's director of payroll, Janice Larsen. R. 48, Attachment 1, Affidavit of Janice Larsen.

33. LEMAN had a "fail safe" policy whereby even after employees were paid, if errors in their compensation were identified, the employees could call those errors to the attention of Ms. Larsen, who would make corrections for any wage or hour payment discrepancies. Larsen Affidavit, ¶ 4.

34. On September 18, 2015, Ms. Malicki utilized this LEMAN "fail safe" procedure, sending an email to Ms. Larsen asking questions about whether or not her payment for the prior pay period had been accurately calculated in light of the hours that she worked. Larsen Affidavit, ¶ 5, Exhibit 1.

35. On August 1, 2017, Ms. Malicki was terminated for cause. (Satula Affidavit, ¶ 18).

36. On November 28, 2017 Ms. Malicki filed a federal class action lawsuit seeking damages for unpaid overtime wages caused by the automatic thirty (30) minute meal break deduction in LEMAN's UltiPro system. (R.1, Malicki Deposition, page 19, 20, 102).

37. Ms. Malicki cannot identify specific examples, or even a provide general estimate of the days and times she claims to have worked, but did not get paid. (Malicki Deposition, page 41-43, 86, 106).

38. Ms. Malicki was able to identify times when LEMAN properly compensated her when she had time errors or worked through her lunch. Malicki Deposition, page 31, 32, 35, 36-38.

39. Ms. Malicki is unable to identify a circumstance when her manager failed to correct a time keeping error either recognized by that manager or brought to her manager's attention by any LEMAN employee. (Malicki Deposition, 99-108).

40. Ms. Malicki did identify examples where LEMAN dutifully adjusted her recorded hours to override the automatic meal break deduction, or to fix other time keeping errors either discovered by a manager or identified and reported by her. (Malicki Deposition, pages 78-81, 90-91, 106).

41. Ms. Malicki has no personal knowledge about the time keeping practices of other LEMAN departments at the Sturtevant location, or the timekeeping procedure used by LEMAN managers and employees at any other LEMAN location. (Malicki Deposition, pages 106-108).

42. Ms. Malicki is unable to identify any other LEMAN employee who was not properly compensated for hours worked. (Malicki Deposition, pages 108-109).

7
374669-11948

43. Ms. Malicki is unable to identify any time that she worked for LEMAN while supervised by Kelly Danielski and utilizing either the punch card or UltiPro timekeeping methods where she was not paid for every bit of time that she worked. (Malicki Deposition, pages 21, 41-43, 106).

44. Ms. Malicki is unable to identify any time that she worked for LEMAN while supervised by Anja Nielsen until her termination, where she exclusively kept time records in UltiPro, that she was not paid for every bit of time that she worked. (Malicki Deposition, pages 21, 56-57, 106).

Dated this 19th day of February, 2018.

            DeMARK, KOLBE & BRODEK, S.C.
            Attorneys for Defendant


            By: */s/ Christopher J. Conrad*
                  Christopher J. Conrad
                  State Bar No. 1011743
                  chrisc@dkblaw.com

<u>Mailing Address</u>
7418 Washington Avenue
Racine, WI  53406
Phone:  (262) 886-9720
Fax:  (262) 886-3074