**JODIE L. MALICKI,**

    **Plaintiff,**

  **v.**                                                           Case No. 17-CV-1674

**LEMAN U.S.A., INC.,**

    **Defendant.**

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

Jodie L. Malicki, a former hourly-paid, non-exempt Office and Warehouse employee at Leman U.S.A., Inc.'s Wisconsin location, alleges that Leman maintained several policies in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Wisconsin Wage Payment and Collection Laws, Wis. Stat. §§ 109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01. Specifically, Malicki alleged that she and other employees were frequently not completely relieved of duty from work during their regular meal times and that Leman had a common policy of failing to compensate its employees by rounding, deducting, and/or failing to count recorded and compensable time, to the benefit of Leman. Malicki initially sought to certify a conditional class of similarly situated hourly paid, non-exempt Office and Warehouse employees at all of Leman's United States locations within three years prior to the date of this lawsuit; however, she later acknowledged that she was only potentially similarly situated to those employed at Leman's Sturtevant, Wisconsin facility.

I denied Malicki's motion for conditional class certification on February 20, 2019. (Docket # 55.) Presently before me is Malicki's motion for reconsideration. Malicki argues that the decision denying conditional class certification was predicated upon a manifest error of fact (Docket # 57 at 3–11) and will result in manifest injustice and needless additional expense (*id.* at 11–15). For the reasons more fully explained below, Malicki's motion for reconsideration is denied.

## ANALYSIS

*1. Reconsideration Standard*

Malicki moves for reconsideration of the February 20, 2019 order denying her motion for conditional class certification. Fed. R. Civ. P. 54(b) allows a court to exercise its inherent authority to reconsider nonfinal orders. *See Civix-DDI, LLC v. Hotels.com, LP*, 904 F. Supp. 2d 864, 866 (N.D. Ill. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("Every order short of a final decree is subject to reopening at the discretions of the . . . judge."). A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). While "[a] court has the power to revisit prior decisions of its own," courts "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 n.8 (1983)). In general, "litigants must fight

an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996).

2. *Reconsideration of Conditional Class Certification Order*

The crux of Malicki's reconsideration motion is that I made a manifest factual error in finding that Malicki failed to cite any evidence indicating that the alleged similarly situated employees were not properly compensated for the time they actually worked. (Docket # 57 at 3.) Malicki further argues I misunderstood her allegations by focusing solely on the rounding component of her time shaving allegations. (*Id.* at 5.)

As an initial matter, I did not misunderstand Malicki's allegations. I noted that she was challenging the alleged Leman policy of indiscriminately shaving time by impermissibly rounding, deducting, and/or failing to count recorded and compensable hours. (Docket # 55 at 2.) Malicki argues that her allegations are better understood as time shaving, of which rounding may be a component. (Docket # 57 at 5.) It is not clear to me, however, how this distinction impacts the analysis in Malicki's case. Malicki alleges that time was shaved from timecards by rounding down, for example, 8.41 hours worked became 8.30 hours worked and 9.11 hours worked became 9.00 hours worked. (Docket # 26-4.) Either way, Malicki alleges that Leman improperly altered the timecards to the benefit of Leman.

Malicki argues that evidence of Leman's practice of rounding, deducting, and/or failing to count recorded and compensable hours is "plain and indisputable" based on the timecards and the defendant's testimony. (Docket # 55 at 6–10.) She believes I was confused about how the "hours paid" column on the timecard summary was derived and counters that how it was derived was "plain and indisputable based on the credible evidence

3

in the record." (*Id.* at 6.) Malicki again points to the handwritten numbers on the timecards. (*Id.* at 7.) I respectfully disagree with Malicki.

To begin, Malicki does not address or attempt to distinguish the strikingly similar case of *Yockey v. Staffing Sols., Inc.*, No. 215CV00411JMSMJD, 2016 WL 7242482 (S.D. Ind. Dec. 15, 2016) cited in the decision. In *Yockey*, the plaintiff also provided timecards with handwritten numbers on them as purported evidence of timekeeping violations. In finding Yockey failed to satisfy even the lenient standard at the conditional class certification stage, the court stated as follows:

> Mr. Yockey does not attest to or provide any evidentiary support as to what the entries on these time cards reflect (i.e., the entries on the right-hand side, versus the handwriting on the left); whose handwriting appears on the time card; or who prepared the time card and how it was prepared. He also does not identify which entries on these time cards provide evidence of a timekeeping violation, and if so, which type of violation is evident (i.e., illegal rounding or meal time violations).

*Id.* at *5. I have similar concerns in Malicki's case, as I stated in the order denying conditional class certification. I do not know whose handwriting appears on the time cards or what the numbers mean. While Malicki wants me to assume that the handwritten numbers were written by a Leman employee and signify the time for which the employees were actually paid, assumptions are not evidence and a plaintiff must provide at least *some* evidence that she and other potential plaintiffs were victims of a common policy or plan that violated the law. *See id.* at *4. Nor does Malicki address the fact that she specifically testified that she was not aware of any other employees who were required to work through their lunch or were otherwise subjected to Leman's alleged improper timekeeping practices. (Docket # 55 at 9.)

4

Malicki further argues that the defendant's testimony establishes that employees were not paid based upon their time actually worked. (Docket # 57 at 8.) Malicki points to Janice Larsen's affidavit in which she explained Leman's system for verifying and correcting any payroll errors with the employees. Malicki argues that because Larsen averred that the "manual punch cards were first reviewed by the employees then totaled **by either** the employee **or his or her supervisor**," this demonstrates that employees were not paid based upon their time actually worked. (Docket # 57 at 8, emphasis by Malicki.) Nothing about the supervisor totaling the hours worked, in and of itself, indicates in any way that employees were not being properly paid. Further, Malicki ignores that Larsen further averred that after the hours were totaled, the "manual punch cards were then initialed by both the employee and the supervisor to certify that the totals were a true and correct record of the actual hours worked by the employee." (Affidavit of Janice Larsen ¶ 2, Docket # 48-1.)

Again, either the employee or the supervisor totals the employee's hours worked. But if that number is then written on the timecard, who wrote it? The employer or the employee? While Malicki believes the same handwriting appears on three of the timecards (Docket # 57 at 8), she presented no evidence that the handwriting is that of the same person or who that person is. And what of the handwriting on the other timecards? And the fact that some of the timecards do not contain any handwritten numbers at all? Perhaps the handwritten numbers reflect corrections made by the employee. While I can make suppositions, the point is that Malicki presents no evidence to support her contentions.

Malicki also effectively argues that Leman's switch to the computerized time card system called UltiPro in April 2016 shows Leman was aware of the alleged FLSA violations

5

because UltiPro was "automatically programmed to round time entries in a neutral manner." (Docket # 57 at 10.) Malicki cites to paragraph five of the affidavit of Susan Satula in support of this assertion. (*Id.*) Paragraph five, however, does not speak to automatic rounding, nor does any portion of Satula's affidavit. (Affidavit of Susan Satula, Docket # 48-3.) Thus, as I stated in the decision, nothing in any of the affidavits of Leman employees even shows that time shaving or rounding was taking place. (Docket # 55 at 7–9.)

Again, without either pay statements or testimony from fellow employees regarding what they were actually paid, I am left with Malicki's supposition that the handwritten numbers on these timecards were written by Leman and that the numbers represent the hours the employees were actually paid. This is insufficient to satisfy the requirement of even the modest factual showing.

Malicki further argues that the decision results in a manifest injustice and will result in needless additional expense if the putative class members must file separate lawsuits. She argues that as the employee, she is at a fundamental disadvantage because she is discouraged from conducting substantial discovery, "lest she face being held to an even higher level of evidentiary scrutiny," whereas the defendant-employer can cherry-pick those individuals most advantageous to its defenses and present those declarations. (Docket # 57 at 12–13.) Malicki is not being held to a higher level of evidentiary scrutiny. The showing she must make is minimal. But Malicki's showing is non-existent. And nothing prevented Malicki from submitting affidavits or declarations from putative class members stating that they too were improperly paid. Consider *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *5 (E.D. Wis. Mar. 28, 2011), where the plaintiff supported his

6

motion for conditional class certification with the declarations of nine putative plaintiffs. Again, while plaintiffs need not produce evidence that other employees wish to join a class before the class notice may be sent out, *see Heckler v. DK Funding*, 502 F. Supp. 2d 777, 780 (N.D. Ill 2007), a "demonstrable lack of interest in a collective action is a strike against certification," *Hadley v. Journal Broad. Group, Inc.*, No. 11-CV-147, 2012 U.S. Dist. Lexis 19452, at *15 (E.D. Wis. Feb. 16, 2012).

Malicki has not shown a manifest error of fact. Rather, she rehashes previously rejected arguments, which is not a proper basis for reconsideration. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). For these reasons, Malicki's motion for reconsideration is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for reconsideration (Docket # 56) is **DENIED**.

Dated at Milwaukee, Wisconsin this 21st day of March, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

7