UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JODIE L. MALICKI
on behalf of herself and all
others similarly situated,

        Plaintiff,                Case No. 17-cv-1674

     v.

LEMAN U.S.A., INC.,

        Defendant.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

### INTRODUCTION

In her *Amended Complaint*, Plaintiff, Jodie L. Malicki, filed three separate but related causes of action against her employer, Defendant, Leman U.S.A., Inc. (Amended Complaint, ECF No. 1 ("Am. Comp.").) To wit, Ms. Malicki alleges that Defendant violated the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201 *et. seq.*, and Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01, *et seq.,* Wis. Stat. § 104.01, *et seq.*, Wis. Stat. § 103.001, *et seq.*, Wis. Admin. Code § DWD 274.01, *et seq.,* and Wis. Admin Code § DWD 272.001, *et seq.* ("WWPCL").

In her first claim for relief, Ms. Malicki alleges that Defendant violated the FLSA in two respects. First, Defendant "improperly and unlawfully engaged in time shaving by impermissibly rounding, deducting, and/or failing to count recorded and compensable hours of work each workday ("FLSA Time Shaving Claim")." (Am. Comp, ¶ 118.) Ms. Malicki further alleges that Defendant

failed to compensate her for "rest periods of short duration," *i.e.* rest periods during which she was not completely relieved from duty for a period of 20 consecutive minutes or less in duration ("FLSA Meal and Rest Period Claim"). (*Id.*) Both Ms. Malicki's FLSA Time Shaving and FLSA Meal and Rest Period Claims encompass *only* those workweeks in which Defendant's unlawful conduct deprived Ms. Malicki of compensation for time actually worked during workweeks in which she worked in excess of 40 hours. (Am. Comp, ¶ 119.)

In her related second and third claims for relief, brought pursuant to the WWPCL, Ms. Malicki once again alleges that Defendant's unlawful time shaving practices deprived her of compensation due to her for time actually worked ("WWPCL Time Shaving Claim"), and further, that Defendant failed to compensate her for compensable rest periods of short duration ("WWPCL Meal and Rest Period Claim"). (Am. Comp, ¶¶ 156, 136-139.) However, Ms. Malicki's WWPCL claims are broader in scope than her FLSA claims, in part,[1] because her WWPCL claims encompass *all* workweeks during which compensable work was performed – regardless of whether Ms. Malicki worked in excess of 40 hours in said workweeks.

Defendant filed its *Motion for Partial Summary Judgment* (ECF No. 50) seeking adjudication of Plaintiff's FLSA and WWPCL Time Shaving Claims as well as Plaintiff's FLSA Meal and Rest Period Claim. Defendant did not move for summary judgment with respect to Ms. Malicki's WWPCL Meal and Rest Period Claim. For the reasons set forth herein, Defendant's *Motion for Partial Summary Judgment* should be denied or held in abeyance.

---

1. Ms. Malicki's WWPCL Meal and Rest Period Claim is also broader than her FLSA Meal and Rest Period Claim because under the WWPCL, an "employer shall pay all employees for on-duty meal periods" defined as "a meal period where the employer does not provide at least 30 minutes free from work." Wis. Admin Code § DWD 274.02(3). By contrast, under the FLSA rest periods of short duration, defined by the FLSA as breaks of "5 minutes to about 20 minutes," must be compensated "as hours worked" 29 C.F.R. § 785.18.

2

## STATEMENT OF FACTS

Defendant is a Wisconsin-based international freight forwarding company, that is, an importer and exporter of products. (PPFOF, ¶ 1.) Defendant's corporate headquarters is located in Sturtevant, Wisconsin. (PPFOF, ¶ 2.) Defendant's Sturtevant location is also home to its warehouse. (PPFOF, ¶ 3.)

### A. Ms. Malicki's Employment at Defendant (March 2, 2015 – August 27, 2017)

Ms. Malicki began working at Defendant's warehouse as a temporary employee of a staffing agency in January 2015. (PPFOF, ¶ 4.) On March 2, 2015, Ms. Malicki started a permanent position with Defendant as a Material Handler, an hourly paid, non-exempt position, at Defendant's warehouse. (PPFOF, ¶ 5.) Ms. Malicki's rate of pay was $13.00 per hour. (PPFOF, ¶ 6.)

Following a workplace injury, on August 27, 2015, Defendant temporarily reassigned Ms. Malicki to its Client Services Department where she remained an hourly paid, non-exempt employee. (PPFOF, ¶ 7.) On January 11, 2016, Defendant permanently reassigned Ms. Malicki to Client Services and raised her hourly rate of pay to $18.00 per hour. (PPFOF, ¶ 8.) On February 9, 2017, Ms. Malicki began her role as Client Services Supervisor. (PPFOF, ¶ 9.) Despite the title of her position, Ms. Malicki had no supervisory authority over other Client Services employees, remaining an hourly paid, non-exempt employee. (PPFOF, ¶ 10.) From May 1, 2017 until August 1, 2017, her last day of employment at Defendant, (PPFOF, ¶ 11.), Ms. Malicki's rate of pay was $23.50 per hour. (PPFOF, ¶ 12.)

Throughout Ms. Malicki's employment at Defendant, she was an hourly paid, non-exempt employee. (Malicki Decl., ¶ 2.) During that time, Defendant: (1) supervised Ms. Malicki's day-to-day activities[2]; (2) maintained the ability and authority to hire, terminate, promote, demote her[3]; (3)

---

2. Am. Ans., ¶ 19.
3. Am. Ans., ¶ 20.

maintained the ability and authority to review Ms. Malicki's work performance[4]; (4) established the work rules, policies, and procedures by which she abided in the workplace[5]; (5) established their work schedules and hours of work.[6]

### B. Timecard Period (March 2, 2015 – April 10, 2016)

Between March 2, 2015 and April 10, 2016 ("Timecard Period"), all of Defendant's hourly paid, non-exempt employees, including Ms. Malicki, were subject to Defendant's uniform timekeeping policies and practices. (PPFOF, ¶ 13.)

#### 1. Timekeeping Policy

During the Timecard Period, Defendant maintained the following Timekeeping Policy:

"Leman is required by federal law to accurately record all hours worked by its employees. All hourly employees are required, therefore, to clock in and clock out in the following situations:

| | |
|---|---|
| Clock In | - At the beginning of your shift. |
| Clock Out | - When leaving the premises because of non-work related reasons. |
| Clock In | - When returning from a non-work related absence. |
| Clock Out | - At the end of your shift. |

Clocking in or out for another employee is not permitted and is cause for immediate termination by the Company.

Employees should clock in and be at their work station by the beginning of their shift.

If you forget to punch in or punch out, see yourManager [sic].

Falsification of a time record is a breach of company policy and is grounds for immediate termination by the Company."

(PPFOF, ¶ 14.)

---

4. Am. Ans., ¶ 21.
5. Am. Ans., ¶ 22.
6. Am. Ans., ¶ 24.

4

Defendant expected its hourly paid, non-exempt employees, including Ms. Malicki, to record their actual hours worked on timecards using a traditional (manual) punch-clock system by performing compensable work immediately after "clocking in" and concluding compensable work immediately upon "clocking out." (PPFOF, ¶ 15.) Furthermore, Defendant expected that the timecards be true and accurate representations of the time actually worked by said employees. (PPFOF, ¶ 16.)

### 2. Timekeeping Practices

In practice, Defendant's written Timekeeping Policy was administered in the following way. As instructed, Ms. Malicki used Defendant's traditional (manual) punch-clock system to "clock in" immediately prior to commencing compensable work, and Ms. Malicki then "clocked out" immediately after ceasing compensable work at the end of each workday. (PPFOF, ¶ 17.) Ms. Malicki followed this practice each and every workweek[7] during the Timecard Period. (PPFOF, ¶ 18.)

When Ms. Malicki worked in Defendant's warehouse,[8] at the end of each pay period, Ms. Malicki gave her timecards to her supervisor, Kevin Rose. (PPFOF, ¶ 20. )Mr. Rose then provided his team's timecards, including Ms. Malicki's, to Janice Larsen, a former employee at Defendant. (PPFOF, ¶ 21.) Ms. Larsen tallied Ms. Malicki's work time, writing the amount of time she attributed to Ms. Malicki's work time on Ms. Malicki's physical timecard.[9]

---

7. Defendant's workweek for FLSA and WWPCL purposes begins at 12:00:00 a.m. Sunday and ends at 11:59:59 p.m. Saturday. (PPFOF, ¶ 19.)

8. Ms. Malicki worked in Defendant's warehouse as a Material Handler from March 2, 2015 through August 27, 2015.

9. Ms. Larsen acknowledged that her handwriting is reflected on Ms. Malicki's April 17, 2015 timecard. (PPFOF, ¶ 22.) The same handwriting appears on Ms. Malicki's timecards during her employment as a Material Handler. (*See also*, Malicki Decl., Ex. 6.)

In calculating Ms. Malicki's actual work time, Ms. Larsen improperly and unlawfully engaged in time shaving by impermissibly deducting and/or failing to count recorded and compensable hours of work each workday. (PPFOF, ¶ 23.)

For example, on March 11, 2015, Ms. Malicki recorded the following times on her physical timecard:

> 15 MAR 11    6:59   AM
> 15 MAR 11   12:13  PM
> 15 MAR 11   12:39  PM
> 15 MAR 11    3:45  PM

(PPFOF, ¶ 24.)  Yet, Ms. Larsen credited Ms. Malicki for working just 8 hours (8:00) on March 11, 2015. (*Id.*) However, even if one deducts a meal period of 25 minutes (0:25),[10] the actual duration between time entries is actually 8 hours and 12 minutes (8:12). (*Id.*)

Similarly, on April 15, 2015, Ms. Malicki's physical timecard reflects the following time entries:

> 15 APR 15    6:55   AM
> 15 APR 15   12:07  PM
> 15 APR 15   12:32  PM
> 15 APR 15    3:32  PM

(PPFOF, ¶ 26.) Ms. Larsen credited Ms. Malicki for working only 8 hours (8:00). (*Id.*) However, the actual duration between time punches is 8 hours and 20 minutes (8:20) even if one deducts 26 minutes (0:26)[11] for Ms. Malicki's meal period.

After Ms. Larsen calculated Ms. Malicki's work time, Ms. Larsen entered Ms. Malicki's work hours into a spreadsheet along with all other hourly paid, non-exempt employees' work

---

10.  Deducting Ms. Malicki's April 15, 2015 meal period of twenty-five minutes (0:25) from Ms. Malicki's compensation would violate Wis. Admin Code § DWD 274.02(3), but likely would not violate 29 C.F.R. § 785.18.

11.  Deducting Ms. Malicki's March 11, 2015 meal period of twenty-six minutes (0:26) from Ms. Malicki's compensation would violate Wis. Admin Code § DWD 274.02(3), but would not violate 29 C.F.R. § 785.18.

6

hours. (PPFOF, ¶ 28.) Ms. Larsen then transmitted the spreadsheet to Defendant's accountant, Clifton Larsen Allen, LLP (formerly Clifton Gunderson, LLP), for payroll processing. (PPFOF, ¶ 29.) Defendant paid Ms. Malicki in accordance with the time Ms. Larsen reported to Clifton Larson Allen, rather than time Ms. Malicki actually worked as accurately reflected on her physical timecards. (PPFOF, ¶ 30.)

The practice described above recurred every two weeks from March 2, 2015 until August 27, 2015. (PPFOF, ¶ 31.) Then, when Ms. Malicki was reassigned to Defendant's Client Services Department, the process changed slightly. Ms. Malicki continued to use Defendant's traditional (manual) punch-clock system to "clock in" immediately prior to commencing compensable work and to "clock out" immediately after ceasing compensable work at the end of each workday. (PPFOF, ¶ 32.) However, Ms. Larsen no longer calculated Ms. Malicki's work hours. (PPFOF, ¶ 33.)

Instead, Ms. Malicki calculated her own hours before submitting her timecard to her new supervisor, Kelly Danielski, Defendant's Client Service Manager. (PPFOF, ¶ 34.) Ms. Danielski then calculated Ms. Malicki's work hours, as reflected on Ms. Malicki's timecard. (PPFOF, ¶ 35.) Often Ms. Danielski agreed with Ms. Malicki's calculations. (*Id.*)

Ms. Danielski thereafter provided Ms. Malicki's timecard to Ms. Larsen. (PPFOF, ¶ 36.) As she did for all of Defendant's hourly paid, non-exempt employees, Ms. Larsen continued to enter Ms. Malicki's work hours into a spreadsheet which she later transmitted to Defendant's accountant, Clifton Larsen Allen for payroll processing. (PPFOF, ¶ 37.) In doing so, however, Ms. Larsen engaged in improper and unlawful time shaving by impermissibly rounding, deducting, and/or failing to count all of Ms. Malicki's actually recorded or compensable hours of work each workday. (PPFOF, ¶ 38.)

Ms. Larsen admitted that, regardless of the time actually worked by hourly paid, non-exempt employees, including Ms. Malicki, she reported hours for payroll purposes in "full hours or quarter hours, half hours." (PPFOF, ¶ 39.) [12] Ms. Larsen's rounding practice inured to Defendant's benefit and to the detriment of Defendant's hourly paid, non-exempt employees, including Ms. Malicki. For example, for the workweek beginning March 13, 2016, Ms. Larsen rounded Ms. Malicki's timecard from 43.44 hours to 43.25 hours. (PPFOF, ¶ 40.)

During the Timecard Period, there were a total of 29 separate workweeks in which Defendant improperly and unlawfully deprived Ms. Malicki of the aggregate amount of 14 hours and 50 minutes (14:50) during which Ms. Malicki suffered or was permitted to work at Defendant without receiving compensation for that time worked. (PPFOF, ¶ 41.)

### C. Timecard Period (March 2, 2015 – April 10, 2016) – Meal and Rest Period Policy

During the Timecard Period, all of Defendant's hourly paid, non-exempt employees, including Ms. Malicki, were subject to Defendant's uniform meal and rest period policies and practices. (PPFOF, ¶ 13.)

#### 1. Meal and Rest Period Policy

Defendant's written Meal and Rest Period Policy read, "[b]oth office and warehouse employees observe a one half hour (some exceptions), unpaid lunch time. In addition there are two paid ten (10) minute breaks for both office and warehouse employees, one in the morning and the other in the afternoon." (PPFOF, ¶ 42.)

---

12. Ms. Larsen cannot recall how she rounded employees' work hours for payroll purposes. (Larsen Dep., p. 53:7-8). Moreover, Defendant has failed to produce Ms. Larsen's spreadsheets despite Ms. Malicki's request nearly one year ago. (Potteiger Decl., ¶¶6-9.)

8

### 2.     Meal and Rest Period Practices

In addition to Defendant's written Meal and Rest Period Policy, Defendant also maintained two unwritten practices during the Time Card Period. (PPFOF, ¶ 43.) First, "when we had the punch cards, you had to punch out no matter that … you punched out at lunch, punched backed in from your lunch … I always punched out for lunch because I was told …'You punch out for lunch and you punch back in.'" (PPFOF, ¶ 44.) Susan Satula, Defendant's Director of Human Resources, confirmed that Defendant's practice at this time was to require employees to clock out for their lunch period, regardless of whether employees left the premises. (*Id*.)

The second unwritten meal and rest period policy maintained by Defendant during the Time Card Period was acknowledged by Ms. Satula. (*Id*.) Defendant deducted the amount of time actually taken by employees, including Ms. Malicki, for meal periods. (*Id*.) Defendant failed to advise Ms. Malicki, and Ms. Malicki had no independent knowledge of the fact that, Defendant was obligated to compensate her for rest periods of short duration, *i.e.* 20 consecutive minutes or less to do so in workweeks in which she worked in excess of 40 hours. (PPFOF, ¶ 46.)

Ms. Malicki's practice was to "clock out" for lunch, regardless of whether she left the premises. (PPFOF, ¶ 47.) Specifically, Ms. Malicki used Defendant's traditional (manual) punch-clock system to "clock out" immediately prior to taking her meal period, and "clock in" immediately prior to commencing compensable work. (PPFOF, ¶ 48.) It was also Ms. Malicki's practice, when calculating her work hours at the end of each pay period, to deduct any time taken for meal periods, regardless of the duration of her break. (PPFOF, ¶ 49.)

As a result of Defendant's Meal and Rest Period Policy as applied *in practice*, Ms. Malicki was never compensated for rest periods of short durations.[13] (PPFOF, ¶ 50.) During the Timecard

---

13.  While it is not germane to the present motion, it is important to note that Defendant's unwritten practice was to deduct the amount of time actual taken by employees, including Ms. Malicki, for meal periods, regardless

Period, Defendant failed to compensate Ms. Malicki for 7 separate rest periods of short duration, totaling 1 hour 52 minutes, in workweeks in which Ms. Malicki worked in excess of 40 hours. (PPFOF, ¶ 51.)[14]

**D.      UltiPro Period (April 11, 2016 – August 1, 2017) – Timekeeping Policy**

From April 11, 2017 until August 1, 2017 ("UltiPro Period"), all of Defendant's hourly paid, non-exempt employees, including Ms. Malicki, were subject to Defendant's uniform timekeeping policies and practices. (PPFOF, ¶ 13.)

**1.      Timekeeping Policy**

Defendant's written Timekeeping Policy for all of its Wisconsin-based hourly paid, non-exempt employees, including Ms. Malicki, did not change during the UltiProp Period. (Satula Dep., Ex. 3, p. L0222.) However, Defendant's unwritten practices at Defendant, described above, did change with the implementation of UltiPro.

Defendant still expected that its hourly paid, non-exempt employees, including Ms. Malicki, follow its written Timekeeping Policy and perform compensable work immediately after "clocking in" and cease compensable work immediately upon "clocking out." (PPFOF, ¶ 15.)Furthermore, Defendant expected that its hourly paid, non-exempt employees' timekeeping, including Ms. Malicki's, be a true and accurate representation of the time actually worked by said employees. (PPFOF, ¶ 16.)

---

of whether said employees were completely relieved from duty for a period of 30 consecutive minutes or less in duration. (Satula Dep., p. 59:8-14.) If for example, an employee clocked out at 12:00 for lunch and clocked in from lunch at 12:22, Defendant's practice would be to deduct 22 minutes from the employee's work time that workday. (*Id.*) As will be established at a later time, Defendant's practice violates the WWPCL regardless of whether Ms. Malicki worked more than 40 hours in a single workweek.

14.  During the Timecard Period, Defendant failed to compensate Ms. Malicki for 51 additional meal periods which did not exceed 30 consecutive minutes in duration, a total of 26 hours and 56 minutes of compensable but uncompensated time according to the WWPCL. (Malicki Decl., Exs. 6-8; Potteiger Decl., Exs. 4-5.)

## 2. Timekeeping Practices

During the UltiPro Period all hourly paid, non-exempt employees, including Ms. Malicki, no longer used Defendant's traditional (manual) punch-clock system. (PPFOF, ¶ 52.) Instead, Defendant required its employees to utilize Defendant's automated time management system called (PPFOF, ¶ 53.)

Defendant's hourly paid, non-exempt employees, including Ms. Malicki, tracked their time via the UltiPro application on their work computers. (*Id.*) For example, Ms. Malicki "clocked in" immediately prior to commencing compensable work from her computer, and Ms. Malicki then "clocked out" immediately after ceasing compensable work at the end of each workday. (PPFOF, ¶ 55.) Ms. Malicki followed this practice each and every workweek during the UltiPro Period. (PPFOF, ¶ 56.)

At the end of each pay period, managers reviewed hourly paid, non-exempt employees' UltiPro timekeeping records, including Ms. Malicki's, for errors. (PPFOF, ¶ 57.) During the UltiPro Period, Ms. Larsen no longer reported its hourly paid, non-exempt employees' work hours, including Ms. Malicki's, to Clifton Larsen Allen. (Satula Dep., p. 52:21-53:9.) Instead, Defendant undertook its own payroll process utilizing a function in UltiPro called Ultimate Software. (PPFOF, ¶ 58.) The time entered by Ms. Malicki and her colleagues in UltiPro was used by Defendant to automatically generate payroll. (PPFOF, ¶ 59.)

The switch to an automated system eliminated Defendant's practice of improperly and unlawfully engaging in time shaving by impermissibly rounding, deducting, and/or failing to count Ms. Malicki's recorded and compensable hours of work each workday. (Malicki Decl., Ex. 10.)

11

### E.     UltiPro Period (April 11, 2016 – August 1, 2017) – Meal and Rest Period Policy

During the UltiPro Period, all of Defendant's hourly paid, non-exempt employees, including Ms. Malicki, were subject to Defendant's uniform meal and rest period policies and practices. (PPFOF, ¶ 13.)

### 1.     Meal and Rest Period Policy

Immediately after the UltiPro Period began, Defendant modified its written Meal and Rest Period Policy. (Satula Dep., Ex. 3, p. L0222.) Effective June 1, 2016, Defendant's written policy read in pertinent part:

> "Employees that are scheduled to work more than five (5) hours must take a thirty (30) minute uninterrupted meal period, off the clock, no later than the end of the fifth hour of work. Employees are entitled to be relieved of all their duties and free to take care of personal matters during that time. Employees that have a six (6) hour shift may voluntarily waive the meal period if they execute a Six Hour Shift Waiver Form. Please see the Human Resource Department.
>
> ***
>
> It is against Leman's policy for any employee to perform work during meal or rest periods. It is against Leman's policy to return to work before the end of a 30 minute meal period or fifteen minute rest break. It is also against Leman's policy for employees to work 'off the clock,' that is, perform work without recording it as time worked on their timesheets."

(*Id.*)

### 2.     Meal and Rest Period Practices

Defendant's *actual* meal and rest period *practices* differed from its *written* Meal and Rest Period Policy in a variety of ways. First, although Defendant programmed UltiPro to automatically deduct 30 minutes from some of its employees' work hours, Ms. Malicki, as well as other hourly paid, non-exempt employees, were advised to "clock out" when leaving the premises for lunch, in order to "override the auto deduction." (Satula Dep., Ex. 5.) Second, Ms. Malicki's supervisor during the UltiPro period, Ms. Anja Nielsen, Defendant's Client Services Manager, recommended that

12

employees "clock out" even "when taking lunch on the premises, unless you always take your full 30 minutes." (PPFOF, ¶ 63.) Third, employees were never reprimanded or disciplined for failing to take a full 30 minute meal period or for working while eating lunch. (PPFOF, ¶ 64.)

During the UltiPro Period, Ms. Malicki's practice was to "clock out" for meal periods only when she left the premises. (Malicki Dep., p. 38:7-15.) Specifically, Ms. Malicki "clocked out" from her work computer immediately prior to taking her meal period, and "clocked in" from her computer immediately prior to commencing compensable work. (Malicki Decl., ¶ 9.)

As was the case during the Timecard Period, when employees overrode the automatic deduction in UltiPro, it was Defendant's practice to deduct the amount of time actually taken by employees, including Ms. Malicki, for meal periods regardless of the duration of the break. (PPFOF, ¶ 44.) The time entered by Ms. Malicki and her colleagues in UltiPro would be used by Defendant to automatically generate payroll, less deductions for meal periods. (PPFOF, ¶ 59.)

Defendant failed to compensate Ms. Malicki for 18 separate rest periods of short duration, totaling 4 hours and 16 minutes, in workweeks in which Ms. Malicki worked in excess of 40 hours. (PPFOF, ¶ 67.)[15] Because Ms. Malicki did not know, at that time, that she was entitled to compensation at an overtime rate of pay, she never raised the issue to her manager. (PPFOF, ¶ 68.)

## STANDARD OF LAW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A "genuine dispute" exists when a jury could find or return a verdict in favor of the non-moving party, and a "material fact" is one that could actually affect the outcome of the

---

15. During the UltiPro Period, Defendant failed to compensate Ms. Malicki for 35 additional meal periods which did not exceed 30 consecutive minutes duration, a total of 12 hours and 50 minutes of compensable and uncompensated time pursuant to the WWPCL. (Malicki Decl., Exs. 8, 10-11; Potteiger Decl., Ex. 4.)

13

case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.

In evaluating whether summary judgment is appropriate, a court must construe all facts and reasonable inferences in favor of the non-moving party, Ms. Malicki. *Id.* at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Tolan*, 134 S. Ct. at 1866; *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004) (*per curiam*). A "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866. When a court fails to credit a non-movant's evidence that contradicts some of its key factual conclusions, the court improperly "weigh[ed] the evidence" and resolved the disputed issues in favor of the moving party. *Id.*; *Liberty Lobby*, 477 U.S. at 249.

In this case and as demonstrated in her Statement of Facts, this Court should deny Defendant's *Motion for Partial Summary Judgment* because there are genuine issues of material fact and Defendant is not entitled to judgement as a matter of law.

## **ARGUMENT**

## I. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE AND SHOULD BE DENIED OR HELD IN ABEYANCE**

On March 13, 2018, this Court entered its *Scheduling Order* (ECF No. 16) following its Rule 16 conference with the parties. The *Scheduling Order* reads, in relevant part, "[a]ll dispositive pretrial motions together with briefs are to be filed … no later than August 9, 2019. Such motions **shall not** be filed prior to the date of completion of discovery [June 5, 2019]." (*Id., ¶* 8.)

Defendant submitted its *Motion for Partial Summary Judgment* on February 19, 2019, and this Court deemed Defendant's motion filed on February 20, 2019. (*See* Text Only Order signed February 20, 2018.) As a result of Defendant filing its *Motion for Partial Summary Judgment* in violation this Court's *Scheduling Order,* Ms. Malicki has been deprived of more than three months' time to conduct additional discovery before opposing Defendant's motion or filing her own dispositive motion. This deprivation has substantially prejudiced Ms. Malicki by preventing her from obtaining relevant documents which Defendant has failed, refused, or neglected to produce. (Potteiger Decl., ¶¶ 6-9.)

Only after additional discovery is conducted will Ms. Malicki be able to present a full and final presentation of material facts necessary to support her FLSA and WWPCL Time Shaving Claims as well as Plaintiff's FLSA Meal and Rest Period Claim or to fully rebut the present motion. For this reason, Defendant's *Motion for Partial Summary Judgment* should be denied or held in abeyance.

## II. THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST IN THE RECORD

Even if this Court refuses to allow Ms. Malicki to conduct additional discovery, as aforesaid, Defendant's *Motion for Partial Summary Judgment* should still be denied because the genuine issues of material fact exist in the record showing that Defendant violated (or, at minimum, could have violated) the FLSA and WWPCL by failing to compensate Ms. Malicki for all hours it suffered or permitted her to work.

The FLSA and WWPCL provide that all time that employers suffer or permit an employee to work must be compensated. *See* 29 U.S.C. §§ 206(a), 207(a); Wis. Stat. §§ 109.01(3), 109.03(1).

"Work not requested but suffered or permitted is work time … The reason is immaterial." 29 C.F.R. § 785.11.

"The FLSA imposes an obligation on the employer 'to exercise its control and see that the work is not performed if it does not want it to be performed.'" *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13); *see also Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017), *cert. denied sub nom. Allen v. City of Chicago, Ill.*, 138 S. Ct. 1302 (2018) ("If the employer does not want to pay overtime, its management must exercise its control and see that the work is not performed."). "The employer cannot sit back and accept the benefits without compensating for them." *Kellar*, 664 F.3d at 177. "The employer's duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id.* (internal citations omitted).

"However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Id.* "The employer's knowledge can be either actual or constructive." *Allen*, 865 F.3d at 938. An "employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision." *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (internal citations omitted). "The cases must be rare where prohibited work can be done and knowledge of the consequences of knowledge avoided." *Id.* (internal citations omitted).

"In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* were such that the employer had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Id.* (emphasis in original) (internal citations omitted); *see also Allen*, 865 F.3d at 938 (stating that "[a]n employer has

constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence."). Stated differently, an "employer can only escape liability by showing that _in addition to_ not having actual knowledge of the work, it did not have constructive knowledge because reasonable diligence would not have helped the employer learn of the work." _Meadows v. NCR Corp._, 2017 WL 5192009, at *8 (N.D. Ill. Nov. 9, 2017) (emphasis added).

An employer's knowledge of overtime work being performed "need not arise _concurrently_ with the performance of overtime, for good reason." _Chao v. Gotham Registry, Inc._, 514 F.3d 280, 287 (2d Cir. 2008) (emphasis in original). "The [FLSA's] overtime provisions apply to work performed off premises, outside of the employer view and sometimes at odd hours, where an employer's concurrent knowledge of an employee's labor is not the norm." _Id._

### A. Ms. Malicki's Timecards Accurately Reflected Her Hours Worked

In Defendant's _Memorandum in Support of Motion for Partial Summary Judgment_, Defendant argues, prematurely, that Ms. Malicki's FLSA and WWPCL Time Shaving Claims should be dismissed because Ms. Malicki "has failed to provide any evidence that actualwork [sic] was performed during these times, any estimate of the time she worked but was not compensated, or any evidence of Leman's actual or constructive knowledge as to this time spent working without payment." (_See_ Def. Br., p. 9.)

As the United States Supreme Court stated in _Mt. Clemens Pottery Co._:

> "An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of the statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the _employer_ who has the duty under s 11(c) of the Act to keep proper

17

records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.

\*\*\*

<u>When the employer has kept proper and accurate records the employee may easily discharge his burden by securing production of those records.</u> But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. . . . In such a situation, we hold that an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the *precise amount* of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

328 U.S. at 686-88 (emphasis added).

Here, Defendant maintains that Ms. Malicki's timecards – its sole method of recording her hours worked during the Timecard Period – comply with the FLSA.[16] By procuring production of the same as demonstrated to the Court,[17] Ms. Malicki satisfied her legal burden of establishing her hours worked. *See Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) (stating that "once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages, and . . . the task is not a difficult one where the employer has kept time records in compliance with the FLSA. In that circumstance, the accurate time records will establish the amount of damages"); *Ingram v. Hagen*, 161 F.Supp.3d 639, 644 (S.D. Ill. 2015) (stating that

---

16. 29 C.F.R. § 516.2(a)(7) requires that such records must include the "[h]ours worked each workday and total hours worked each workweek." Defendant's timecards satisfy this requirement.

17. *See Id.*

18

"[t]he damages burden a plaintiff has to shoulder depends on the existence of accurate and adequate time records: if those records exist, damages can be proven with them"); *Schremp v. Langlade Cty.*, 2012 WL 3113177, at * 3 (E.D. Wis. July 31, 2012) (stating that "[w]here an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages").

Defendant's Director of Human Resources, Susan Satula, admitted that Defendant's timecards are, in fact, an accurate representation of the time Ms. Malicki actually worked. (Satula Dep., p. 59:8-14.) Further, Defendant has repeatedly proclaimed that hourly paid, non-exempt employees, like Ms. Malicki, should review their timecards with their managers to assure the timecards are accurate. (*Id.*) Correspondingly, Ms. Malicki recorded her hours of work as accurately as possible using Defendant's traditional (manual) punch-clock system to "clock in" immediately prior to commencing compensable work, and to  Ms. Malicki then "clock out" immediately after ceasing compensable work at the end of each workday. (Malicki Decl., ¶ 4.)

Ms. Malicki demonstrably recorded all of her compensable hours worked, the parties and the Court possess the records demonstrating the same, and the evidentiary record demonstrates the accuracy of those records. For all such reasons, the record makes clear that Ms. Malicki's timecards are an accurate record of her hours actual worked.

### B. Defendant Violated the FLSA and WWPCL by Failing to Compensate Ms. Malicki for All Hours Suffered or Permitted to Work During as Recorded On Her Timecards

The FLSA requires employers to pay employees a minimum hourly wage for all "hours worked," including at an overtime rate of pay for all hours worked in excess of 40 in a workweek,[18]

---

18.  29 U.S.C. §§ 206, 207

19

even if employers do not want that work performed,[19] unless the time at issue is *de minimis.*[20] *See Mt. Clemens Pottery Co.*, 328 U.S. at 692.

Similarly, Wis. Admin. Code § DWD 274.03 states, in part: "each employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." The WWPCL further mandates that employers compensate its employees for all hours worked, including those not worked in excess of forty (40) hours in a workweek, at their agreed-upon wage. *See* Wis. Stat. §§ 109.01(3), 109.03(1).

The United States Supreme Court has held that under the "continuous workday rule," "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005) (*citing* 29 C.F.R. § 790.6(b)). Pursuant to the "continuous workday rule," employees "must be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur during the period between commencement and completion on the same workday of an employee's principal activity or activities, subject to FLSA carve outs." *Mitchell v. JCG Indus. Inc.,* 753 F.3d 695, 696 (7th Cir. 2014) (emphasis added); *see also IBP, Inc.,* 546 U.S. at 37 (2005); *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F.Supp.3d 822, 833, (N.D. Ill. 2017) (noting that "[t]he term 'hours worked' includes all time during which an employee is suffered or permitted to work whether or not he is required to do so"); *Hart v. Rick's Cabaret Int'l,*

---

19. *Kellar*, 664 F.3d at 177; 29 C.F.R. § 785.11

20. "The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute. *Singh v. City of New York,* 524 F.3d 361, 370 (2d Cir.2008). Summit bears the burden to show that the de minimis doctrine applies. See *Frank v. Wilson & Co., Inc.*, 172 F.2d 712, 715 (7th Cir.1949) (characterizing the de minimis doctrine as a defense); *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 868 (W.D.Wis.2007) (explaining that because defendant sought to rely on the de minimis exception, the defendant had the burden of proof).*Kellar*, 664 F.3d at 176. By failing to raise the affirmative defense Defendant's Brief, Defendant waived the *de minimis* doctrines application.

Case 2:17-cv-01674-NJ   Filed 03/22/19   Page 20 of 25   Document 63

*Inc.*, 60 F.Supp.3d 447, 476 (S.D.N.Y. 2014) (finding that alleged "noncompensable activities" cited by the defendant "undisputedly took place *during* the dancers' workday. Accordingly, there is no issue of fact with respect to the amount of time for which dancers are entitled to be compensated. They are entitled to be compensated for all hours worked between the time they logged in until the time they logged out") (emphasis in original); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 953 (W.D. Wis. 2008) (stating that "[u]nder the FLSA, an employee must be compensated for *all* hours worked which is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness").

Regulations recognize that minor discrepancies between punches on a timecard and actual hours of work will happen and do not affect Defendant's responsibility to compensate Ms. Malicki for all hours worked during her continuous workday as reflected on her timecards. *See* 29 C.F.R. § 785.48(a) (stating that "[m]inor differences between the clock records and actual hours worked cannot ordinarily be avoided"). Rather, the only "carve out" available to Defendant (*i.e.,* time for which Defendant was not required to compensate Ms. Malicki) is bona fide meal periods. *See Mitchell*, 753 F.3d at 696 (stating that employee must be paid for entirety of workday, "except for the *bona fide* lunch break"); *see also Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 363 (4th Cir. 2011); *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 472 (S.D.N.Y. 2015) ("All of the time worked during a continuous workday is compensable, save for bona fide meal breaks"); *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *21 (W.D. Wis. Apr. 11, 2011) (stating, "any activities performed *within* this 'workday' are generally compensable").

Despite acknowledging that its timecards are the most accurate representation of the time its hourly paid, non-exempt employees, including Ms. Malicki, actually worked on behalf of

Defendant during the Timecard Period, Defendant actively engaged in unlawful and improper time shaving by impermissibly rounding, deducting, and/or failing to count Ms. Malicki's recorded and compensable hours of work each workday.

While working as a Material Handler at Defendant's warehouse, Ms. Malicki was the victim of Ms. Larsen's failure to lawfully and properly calculate all of her compensable hours of work each workday. (Malicki Decl., Ex. 6; Potteiger Decl., Ex. 5.) Then, while working in Defendant's Client Services Department, Ms. Malicki was once again victim of Ms. Larsen's unlawful and improper rounding practice. (Larsen Dep., p. 53:7-8). During the Timecard Period, there were a total of 29 separate workweeks in which Defendant improperly and unlawfully deprived Ms. Malicki of the aggregate amount of 14 hours and 50 minutes (14:50) during which Ms. Malicki suffered or was permitted to work at Defendant. (Malicki Decl., Exs. 6-8; Potteiger Decl., Exs. 4-5.)

Indeed, the evidence in the record demonstrates that not only did Defendant fail to compensate Ms. Malicki for all compensable time Ms. Malicki worked after "clocking in" and before "clocking out," but Defendant had both constructive and actual knowledge that Ms. Malicki was performing work while "clocked in."

### C. Defendant Violated the FLSA and WWPCL by Failing to Compensate Ms. Malicki for Rest Periods of Short Duration

As noted in her Statement of Facts, during both the Timecard Period and UltiPro Period, it was Defendant's practice to deduct the amount of time actually taken by employees, including Ms. Malicki, for meal periods regardless of the duration of the break. (Satula Dep., p. 59:8-14.)

Thus, the key question is whether the length of time Ms. Malicki was relieved from duty transformed her compensable rest period of short duration into a *bona fide*, non-compensable meal period. *See Naylor v. Securiguard,* 801 F.3d 501, 505 (stating that "the duration of the break [is] the key factor in whether it is classified as the shorter, compensable 'rest break' or the longer,

noncompensable 'meal period'"); *see also Mitchell*, 753 F.3d at 696 (stating that employee must be paid for entirety of workday, "except for the *bona fide* lunch break"); *Perez,* 650 F.3d at 363; *Salinas*, 123 F.Supp.3d at 472 (stating that "[a]ll of the time worked during a continuous workday is compensable, save for bona fide meal breaks"); *Espenscheid*, 2011 WL 10069108, at *21 (stating, "any activities performed *within* this 'workday' are generally compensable"). Defendant bears the burden of proof as to this issue, *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F.Supp.2d 1043, 1051 (E.D. Wis. 2010), a burden it demonstrably cannot carry.

Both the FLSA and WWPCL differentiate between compensable breaks and non-compensable, *bona fide* meal periods.[21] Under the FLSA, a *bona fide* meal period is a duty-free[22] period lasting "30 minutes or more," with the possibility of a shorter period sufficing "under special conditions." 29 C.F.R. § 785.19. Defendant has neither raised the issue nor established any such special conditions. Regardless, "rest periods of short duration, running from 5 minutes to about 20 minutes … promote the efficiency of the employee and … must be counted as hours worked." 29 C.F.R. § 785.18.

The evidence in the record establishes that during the Timecard Period, Defendant required its hourly paid, non-exempt employees, including Ms. Malicki, to use Defendant's traditional (manual) punch-clock system to "clock out" immediately prior to taking their meal period, and "clock in" immediately prior to commencing compensable work. (Malicki Decl., ¶ 5.) The record further establishes that Ms. Malicki complied with Defendant's practice. (*Id*.) During the UltiPro

---

21.  Under the WWPCL, employers "*shall* pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work." Wis. Admin. Code § DWD 274.02(3) (emphasis added).

22.  "Courts have held entire meal breaks to be compensable under the FLSA when employees continued to have job duties during their breaks." *Burks v. Equity Grp.-Eufaula Div., LLC*, 571 F.Supp.2d 1235, 1247-48 (M.D. Ala. 2008) (collecting cases).

Period, Defendant required its hourly paid, non-exempt employees, including Malicki to utilize UltiPro to "clock out" immediately prior to taking their meal period, and "clock in" immediately prior to commencing compensable work. (Malicki Decl., ¶ 9.) Ms. Malicki acquiesced. (*Id.*)

During Ms. Malicki's employment, Defendant failed to compensate Ms. Malicki for 25 separate rest periods of short duration, totaling 6 hours and 8 minutes, in workweeks during which Ms. Malicki worked in excess of 40 hours. (Malicki Decl., Exs. 8, 10-11; Potteiger Decl., Ex. 5.)

Moreover, to the extent that Defendant may argue that Ms. Malicki violated Defendant's requirement to take her full 30 minute break, Defendant's recourse was to discipline Ms. Malicki, not fail to compensate her. *Am. Future Sys., Inc.*, 873 F.3d at 432 (stating that "[w]here the employee is taking multiple, unscheduled nineteen minute breaks over and above his or her scheduled breaks for example, the employer's recourse is to discipline or terminate the employee—not to withhold compensation"); *see Kasten*, 556 F.Supp.2d at 953 (stating that a "Defendant is entitled to take disciplinary measures against employees who take excessively long breaks, but it cannot be permitted to offset such time against uncompensated work time in its attempt to satisfy the requirements placed on it under the FLSA."). To that end, Ms. Malicki was never reprimanded or disciplined (Malicki Decl., ¶ 10), and it is clear that Defendant's Client Services Manager, Anja Nielsen, had no intention of disciplining Ms. Malicki given that Ms. Nielsen knew employees took rest periods of short duration, and recommended a method of avoiding an automatic deduction of a full 30 minute meal period. (Malicki Decl., Ex. 11, p. L1832.)

Pursuant to the FLSA and WWPCL, Defendant was legally required to compensate Ms. Malicki for all rest periods of short duration. Defendant demonstrably failed to do so. Accordingly, this Court should not deny Defendant's *Motion for Partial Summary Judgment*.

## CONCLUSION

24

For all of the foregoing reasons, this Court should deny or hold Defendant's *Motion for Partial Summary Judgment* in abeyance until such time as Ms. Malicki can conduct additional discovery. Alternatively, this Court should deny Defendant's *Partial Motion for Summary Judgment* because genuine issues of material fact exist such that Defendant is not entitled to judgment as a matter of law on Plaintiff's FLSA and WWPCL Time Shaving Claims as well as Plaintiff's FLSA Meal and Rest Period Claim.

Dated this Friday, March 22, 2019.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

 s/ *David M. Potteiger*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009

David M. Potteiger, State Bar No. 1067009
WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com

25